UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MATTHEW MIGLIORE, on behalf of himself and other individuals similarly situated,

              Plaintiff,

        v.

HOFSTRA UNIVERSITY - MAURICE A. DEANE SCHOOL OF LAW; and other affiliated entities and individuals,

              Defendant.

Civil Action No.:
20-cv-3671-GRB-ARL

---

GABRIEL STELLATO, HANNAH BUCKLEY, REBEKAH COHEN, IMANI SCHULTERS, MIAH LATVALA, and MIKAYLA FALLON, individually and on behalf of all others similarly situated,

              Plaintiffs,

        v.

HOFSTRA UNIVERSITY,

              Defendant.

Civil Action No.
2:20-cv-0199-GRB-ARL

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(c)**

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendant
Office and P.O. Address
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000

# TABLE OF CONTENTS

**Pages**

Table of Authorities ............................................................................................................. ii

Preliminary Statement ......................................................................................................... 1

Factual Background ............................................................................................................. 2

    I.   Hofstra's Academic Bulletins and Catalogs ................................................... 2

    II.  Events of the Spring 2020 Term ..................................................................... 2

    III. Government Actions ....................................................................................... 5

    IV. Plaintiffs' Allegations .................................................................................... 6

Argument ............................................................................................................................ 7

  Standards for Motions Under Rule 12(b)(6) and Rule 12(c) .................................... 7

  Point I ........................................................................................................................ 8

    Plaintiffs' Breach of Contract Claims Must Be Dismissed ............................. 8

    A. *Stellato Action* – Plaintiffs Have Not Sufficiently Alleged a Breach of Contract ...... 10

    B. *Migliore Action* –Plaintiffs Have Not Sufficiently Alleged a Breach of Contract ..... 14

    C. Hofstra Reserved Its Right to Modify Course Modalities ......................... 16

    D. Plaintiffs Allege Non-Cognizable Educational Malpractice Claims ........................ 17

  Point II ...................................................................................................................... 19

    The Unjust Enrichment Claim in *Migliore* Must Be Dismissed ....................................... 19

Conclusion ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................................7, 8

*Beck v. Manhattan Coll.,*
    20-cv-3229, 2021 WL 1840864 (S.D.N.Y. May 7, 2021)................................................10, 13

*Bianco v. Bianco,*
    36 A.D.3d 490 (1st Dep't 2007) ........................................................................................9

*Carr v. St. John's Univ.,*
    17 A.D.2d 632 (2d Dep't 1962), *aff'd on opinion below*, 12 N.Y.2d 802 (1962) ....................8

*In re Columbia Tuition Refund Action,*
    20-cv-3208, 2021 WL 790638 (S.D.N.Y. Feb. 26, 2021) ................................7, 12, 16, 19, 20

*Gally v. Columbia Univ.,*
    22 F. Supp. 2d 199 (S.D.N.Y. 1998).................................................................................18

*Goldberg v. Pace Univ,*
    20-cv-3665, 2021 WL 1565352 (S.D.N.Y. Apr. 21, 2021) ...................................................20

*Hassan v. Fordham Univ.,*
    20-cv-3265, 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021) (Wood, J.),
    *amended in part*, 20-cv-3265, 2021 WL 1263136 (S.D.N.Y. Apr. 6, 2021)...............15, 16, 20

*Hewitt v. Pratt Institute,*
    20-cv-2007, 2021 WL 2779286 (E.D.N.Y. July 2, 2021) ....................................10, 13, 16, 17

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,*
    62 F.3d 69 (2d Cir. 1995).................................................................................................8

*Jeffers v. Am. Univ. of Antigua,*
    125 A.D.3d 440 (1st Dep't 2015) .....................................................................................19

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000).............................................................................................19

*Keefe v. New York Law Sch.,*
    71 A.D.3d 569 (1st Dep't 2010) .......................................................................................9

*Lindner v. Occidental Coll.,*
    CV-20-8481-JFW, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) .........................................19

12782495

*Maas v. Cornell Univ.*,
    94 N.Y.2d 87 (1999) ........................................................................9

*Morales v. New York Univ.*,
    20-cv-4418, 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021)................10, 13

*Paladino v. Adelphi University*,
    89 A.D.2d 85 (2d Dep't 1982) .....................................................18, 19

*Papelino v. Albany Coll. of Pharm.*,
    633 F.3d 81 (2d Cir. 2011)............................................................9, 17

*Paynter v. New York Univ.*,
    66 Misc. 2d 92 (1st Dep't 1971) .......................................................10

*Pinkney v. State of New York*,
    Claim No. 135251 (Ct. of Cl. May 4, 2021) ..............................13, 14, 16

*Romankow v. New York Univ.*,
    20-cv-4616, 2021 WL 1565616 (S.D.N.Y. Apr. 21, 2021) ..........10, 14, 17

*Shak v. Adelphi Univ.*,
    20-cv-1951, 2021 WL 3030069 (E.D.N.Y. July 15, 2021) ....10, 11, 13, 19

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
    425 F.3d 119 (2d Cir. 2005)................................................................8

*Susan M. v. New York Law Sch.*,
    76 N.Y.2d 241 (1990) ....................................................................18

*Tedeschi v. Hofstra Coll.*,
    49 N.Y.2d 652 (1980) ......................................................................9

*Zagoria v. New York Univ.*,
    20-cv-3610, 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021).........10, 15, 20

## Statutes & Rules

FRCP 12(b)(6) ..................................................................................7, 19

FRCP 12(c) ...........................................................................................7

## Other Authorities

Economic Development, *Guidance for Determining Whether a Business is Subject to a*
    *Workforce Reduction Under Recent Executive Orders*, *https://esd.ny.gov/guidance-executive-*
    *order-2026* ......................................................................................6

*http://www.nysed.gov/common/nysed/files/nysed-coronavirus-guidance-colleges-and-universities_0.pdf* ...............................................................................................6

*https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/* .................................5

*https://www.governor.ny.gov/news/no-2028-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency* .............................................................................5

*https://www.nycourts.gov/ctapps/520rules10.htm#3* .................................................15

*https://www.nycourts.gov/ctapps/news/TempWaiver-4-21-2020.pdf* .............................6

*Webster's 3d New Int'l Dictionary* (1993) ....................................................................9

12782495

## PRELIMINARY STATEMENT

Defendant Hofstra University ("Hofstra") submits this memorandum of law in support of its motions pursuant to Rule 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, seeking dismissal of these two putative class actions.

Plaintiffs are Hofstra students who seek to recover damages for breach of contract because, in light of the global COVID-19 pandemic, and as required by mandatory State closure orders, Hofstra transitioned to remote instruction during the Spring 2020 Term. Plaintiffs' actions must be dismissed because they received what they bargained for when they enrolled at Hofstra – instruction in their chosen courses by Hofstra faculty and, upon completion of their work, academic credit toward Hofstra degrees.

Hofstra publishes student handbooks and catalogs. Plaintiffs have not alleged any enforceable promise in those documents that Hofstra will provide in person, on-campus instruction, even in the face of a global pandemic and a State-ordered shutdown of Hofstra's campus. Instead, Plaintiffs seek to form a new contract by piecing together course schedules, information about unrelated distance learning programs, and generalized statements about the Hofstra on-campus experience published on Hofstra's website. In none of these resources did Hofstra promise that any course would at all times be conducted in any particular fashion, nor did Hofstra relinquish its authority to alter the modality of its course instruction. In fact, to the contrary, Hofstra explicitly reserved its right to do so in its bulletins and handbooks. Nor have Plaintiffs sufficiently pled "when or how" Hofstra breached any specific contractual promise for any of the fees that Plaintiffs seek to recover. For these reasons, discussed more thoroughly herein, Plaintiffs' complaints in both actions must be dismissed.

12782495

## **FACTUAL BACKGROUND**

I.    *Hofstra's Academic Bulletins and Catalogs*

Neither the Hofstra Undergraduate Bulletin nor the Hofstra Law Catalog for the 2019-2020

academic year contains a promise that students will receive an "in-person educational experience."

They do, however, reserve Hofstra's right to modify the mode of instruction at Hofstra's discretion.

The 2019-2020 Undergraduate Bulletin contains the following language:

> The programs of instruction, the academic calendar and personnel
> announced in this Bulletin are subject to change at the discretion of
> the administration.[1]

The 2019-2020 Law School Catalog likewise contains "reservation of rights language":

> The Law School reserves the right to change its rules and
> regulations, admissions and graduation requirements, course
> offerings, tuition, fees and any other material set forth in *Law School
> Catalog* at any time without prior notice. Nothing in this *Catalog* is
> intended to create, nor shall anything be understood to create,
> contractual or legally enforceable rights. Students are deemed to
> have read and understood both the *Student Handbook* and the *Law
> School Catalog*. Any questions concerning the contents of
> the *Student Handbook* or *Catalog* should be addressed to the Office
> of the Dean.

Plaintiffs, of course, ignore this language. This is understandable because Hofstra's

expressly reserved rights require dismissal of Plaintiffs' claims in both actions.

II.    *Events of the Spring 2020 Term*

During the Spring 2020 Term, Plaintiffs in the *Stellato Action,* Gabriel Stellato, Miah

Latvala, Hannah Buckley, Imani Schulters, and Mikayla Fallon, were enrolled at Hofstra as

undergraduate students. *Amended Complaint* (ECF Doc. 17) ("*AC*"), ¶¶ 7-8, 10-12. Plaintiff

Rebekah Cohen was enrolled as a student at the Maurice A. Deane School of Law ("Hofstra Law").

---

[1] The Court may consider the Law School Catalog and the Undergraduate Bulletin because Plaintiffs' pleadings reference them, they are integral to Plaintiffs' pleadings, and are publicly available. *See* pp. 7-8, *infra.*

12782495

*Id.*, ¶ 9. Plaintiff in the *Migliore Action,* Matthew Migliore, was also enrolled as a student at Hofstra Law. *Second Amended Complaint* (ECF Doc. 21) ("*SAC*"), ¶ 11.

Undergraduate classes for the Spring 2020 Term began on January 27, 2020. *Answer* (ECF Doc. 18) ("*Stellato Answer*"), Ex. D. Hofstra Law classes began on January 8, 2020.

On March 8, 2020, because of concerns about the coronavirus, Hofstra announced that it was cancelling in-person classes beginning on Monday, March 9 for the week. Hofstra stated that all classwork would be made up at a later time. Residence and dining halls remained open.[2]

Following Hofstra's university-wide March 8 announcement, on March 9, Hofstra Law informed students that classes for that day were cancelled but would be made up on a later date.[3] Hofstra Law informed students that "[b]eginning tomorrow (Tuesday, March 10), all Law School classes will be taught remotely via Zoom…the Law School (including the library) is open and accessible to all students…". Classes would be taught synchronously (at the same times they normally would meet), and "[a]ttendance will continue to be taken and required during all remote class sessions. Students are expected to be prepared and ready to participate just as if they were attending the class in person…".

On March 12, Hofstra announced that when classes resumed for undergraduates after Spring Break on March 23, they would be delivered by remote means until further notice.[4] Residence halls remained open, and student services continued. Spring Break for undergraduate students took place as scheduled from March 14 through March 22. Hofstra's dining halls and Student Center (among other facilities and services) remained open.

---

[2] https://news.hofstra.edu/2020/03/10/university-coronavirus-update-2/ (attached as Ex. E to the *Stellato Answer*).

[3] https://lawnews.hofstra.edu/2020/03/09/hofstra-law-covid-19-update-march-9/

[4] https://news.hofstra.edu/2020/03/12/university-coronavirus-update-3/ (attached as Ex. G to *Stellato Answer*).

12782495

On March 12, Hofstra Law announced that it was extending remote instruction through March 27. The Law Library remained open.[5] Students were assured that:

> Our goal, and the University's goal, is to continue our critical mission of educating students in a safe environment, while ensuring a clean and healthy campus for our students, faculty and staff.
>
> …
>
> While this may be a difficult or uncertain time for you, I want you to know that the health of the Hofstra Law Community remains our top priority, and that we will do everything we can to continue to provide you with an outstanding law school experience.

On March 17, Hofstra announced that classes would be taught remotely for the remainder of the semester, and "in keeping with government directives and our commitment to keep campus safe by reducing population density – it has become necessary to limit our residential population only to those with a compelling need to remain on campus."[6] On the same day, Hofstra Law announced that law school remote classes would also continue through the end of the semester. The academic calendar remained the same, final exams were administered remotely, and administrators "remain[ed] accessible to meet with you via email, phone or Zoom."[7]  All other student services, such as the writing center, tutoring center, career services and health and counseling services (to name a few), remained available to undergraduate and law students.

On March 20, Hofstra released a message to the Hofstra community that emphasized its "continuing attempt to balance our educational mission with the absolute imperative to keep you and your families safe and healthy."[8] It stated that Hofstra faculty had been working to transition

---

[5] https://lawnews.hofstra.edu/2020/03/12/hofstra-law-covid-19-update-march-12/

[6] https://news.hofstra.edu/2020/03/17/university-coronavirus-update-5-2/ (attached as Ex. I to *Stellato Answer*). In this March 17 update, students were informed that Hofstra would be issuing a housing credit to students leaving their residence halls as a result of the COVID-19 pandemic. *Id.*

[7] https://lawnews.hofstra.edu/2020/03/16/hofstra-law-covid-19-update-march-17/

[8] https://news.hofstra.edu/2020/03/17/university-coronavirus-update-5-2/ (last visited July 18, 2021).

classes to remote means and to "make the adjustments and changes necessary to create a meaningful educational experience…," and that IT personnel had worked "continuously to ensure that the classes and services needed will be available."  Students were informed that:

> [t]utoring and the writing center, advising and student access services, and other student support services, are all or soon will be available by phone, online, or Zoom session.
>
> All of us are suddenly dealing with questions of health and safety, our living conditions, and how we will be able to work remotely. We can and will pull together as we have during other challenging times.

Hofstra continued to provide dining services to remaining students, and the Student Health and Counseling Center remained open. The last day of the semester for undergraduate students was May 16. *Stellato Answer*, Ex. D.

Hofstra Law's Spring Break took place as scheduled from March 30 through April 3. The semester ended on May 12, 2020.[9]

### III.    Government Actions

Hofstra's announcements coincided with State and federal government actions. On March 7, 2020, Governor Cuomo issued Executive Order ("EO") 202, which declared a disaster emergency. On March 11, the World Health Organization declared the COVID-19 outbreak to be a pandemic. On March 13, the President of the United States declared a National Emergency.[10] On March 20, 2020, President Trump declared a major disaster for New York State, and Governor Cuomo issued EO 202.8, mandating a shutdown of non-essential businesses.[11]

---

[9] As stated above, there are named plaintiffs in both the *Stellato* and the *Migliore Actions* that were law students during the Spring 2020 Term.  Accordingly, the University-wide and Law School specific communications discussed herein are relevant to both actions.

[10] https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[11] https://www.governor.ny.gov/news/no-2028-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

New York State guidance made clear that Governor Cuomo's Executive Orders prohibited private institutions from providing in person classes ("no in person congregate classes are permitted") and supported the provision of "remote instruction or streaming of classes." [12] The New York State Education Department permitted colleges and universities impacted by pandemic-related campus closures to provide courses in remote formats for the Spring 2020 academic term that were not previously registered with the Department as distance education programs.[13]

Chief Judge Janet DiFiore (New York State Court of Appeals), issued an order on April 21, 2020, waiving New York's rule that limited distance education for law students to 15 credit hours, instead ordering that law school classes that were transitioned to remote instruction during the Spring 2020 semester because of the pandemic not count towards that limit.[14]

IV.    *Plaintiffs' Allegations*

Plaintiffs in the *Stellato* and *Migliore Actions* do not allege that they did not receive instruction through the end of the Spring Semester. To the contrary, both actions allege that Hofstra continued instruction remotely. *AC*, ¶ 53; *SAC*, ¶ 4. Plaintiffs allege only that they were deprived of the benefits of on campus learning. *AC*, ¶¶ 1, 53; *SAC*, ¶¶ 3-4.

The *Stellato Action* alleges breach of contract and breach of implied contract.[15] Plaintiffs purport to represent a class of "all persons who paid, on behalf of themselves or others, tuition or fees for on-campus programs at Hofstra University for the Spring 2020 Semester." *AC*, ¶ 69. The

---

[12] New York Department of Economic Development, *Guidance for Determining Whether a Business is Subject to a Workforce Reduction Under Recent Executive Orders*, https://esd.ny.gov/guidance-executive-order-2026 (last updated October 23, 2020).

[13] http://www.nysed.gov/common/nysed/files/nysed-coronavirus-guidance-colleges-and-universities_0.pdf. NYSED extended this guidance to courses being offered during the Summer 2020 terms on April 2, 2020. *Id.*

[14] https://www.nycourts.gov/ctapps/news/TempWaiver-4-21-2020.pdf

[15] The Court dismissed Plaintiffs' unjust enrichment and conversion claims in an Order dated April 14, 2021. ECF Doc. 25.

*Migliore Action* alleges breach of contract and unjust enrichment.[16] Plaintiff purports to represent a class of "all individuals who paid tuition and fees to Hofstra Law to receive in-person educational services, experiences, and opportunities during the Spring 2020." *SAC*, ¶ 54.[17]

The SAC fails to state a cause of action. Accordingly, Hofstra requested a pre-motion conference, seeking permission to move to dismiss the SAC. The conference was held on June 21, and the Court granted Hofstra's request to move to dismiss the *Migliore Action*. ECF Doc. 26. In addition, in light of overlapping issues, the Court permitted Hofstra to move for judgment on the pleadings in the *Stellato Action*. ECF Doc. 26, pp. 26-29.[18]

Accordingly, Hofstra now moves to dismiss the SAC in the *Migliore Action* pursuant to FRCP 12(b)(6) and for judgment on the pleadings in the *Stellato Action* pursuant to FRCP 12(c).

## ARGUMENT

### STANDARDS FOR MOTIONS UNDER RULE 12(b)(6) AND RULER 12(c)

Rule 12(b)(6) motions to dismiss and Rule 12(c) motions for judgment on the pleadings "are subject to the same legal standards," and require dismissal of a cause of action when the plaintiff fails to state a claim upon which relief may be granted. *In re Columbia Tuition Refund Action*, 20-cv-3208, 2021 WL 790638, at *2 (S.D.N.Y. Feb. 26, 2021). To survive either type of motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[16] The Court dismissed Plaintiff's conversion claim during a pre-motion conference held on June 21, 2021. ECF Doc. 26.

[17] The SAC is Plaintiff's third attempt to adequately plead claims against Hofstra. In February 2021, Hofstra moved to dismiss Plaintiff's original complaint. In response to Hofstra's pre-motion conference request, Plaintiff filed an Amended Complaint. ECF Doc. 15. This Amended Complaint did not adequately plead claims against Hofstra, and after a pre-motion conference held on April 14, 2021, the Court granted Hofstra's motion for judgment on the pleadings dismissing two of the three claims in Plaintiff's Amended Complaint but offered Plaintiff the opportunity to amend his pleading. Plaintiff did so with the filing of the SAC on April 28, 2021.

[18] The Court granted permission for Hofstra to brief "whatever [it] want[s]" concerning the *Stellato Action*. *Migliore Action*, ECF Doc. 26, p. 29:2-11.

*Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Bell Atl. Corp.,* 550 U.S at 555). When ruling on a motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

In deciding these motions, the court may consider the pleadings, any written instrument attached to them as exhibits or any document that is "incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

## POINT I
## PLAINTIFFS' BREACH OF CONTRACT CLAIMS MUST BE DISMISSED

A breach of contract claim by a student must allege breach of a specific promise by the university. Plaintiffs' contractual claims fail because they have not identified any specific promise of in-person education in the Undergraduate Bulletin or Law Catalog.[19] Hofstra's administration concluded that instruction could and should continue and that the completion of such instruction would be sufficient to earn credits toward a Hofstra degree. Under New York law, it is not for this Court to evaluate the academic programming and determine its worth.

The New York Court of Appeals has recognized that "[w]hen a student is duly admitted by a private university . . . there is an implied contract between the student and the university . . . ." *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 (2d Dep't 1962), *aff'd on opinion below*, 12 N.Y.2d

---

[19] The highly subjective determination of the "value" of in-person instruction would vary significantly by individual student, making Plaintiffs' efforts to represent classes of students dubious. Students at Hofstra have different programs and experiences: many enroll in classes that are taught fully by lecture and do not involve any "hands-on" work. Others may not engage in activities on campus that call for interactive experiences. The prospect of such a student-by-student evaluation demonstrates that class certification of the claims herein would be highly problematic. It also demonstrates why New York courts have declined to entertain the type of "breach of contract" claims asserted here.

802 (1962). However, in *Tedeschi v. Hofstra Coll.*, 49 N.Y.2d 652 (1980), the Court of Appeals explained that in defining the relationship between a student and a university:

> Contract theory is not wholly satisfactory . . . because the essentially fictional nature of the contract results in its generally being assumed rather than proved, because of the difficulty of its application, and because it forecloses inquiry into, and a balancing of, the countervailing interests of the student on the one hand and the institution on the other.

*Id.* at 658 (citations omitted); *Maas v. Cornell Univ.,* 94 N.Y.2d 87 (1999). Courts have steadfastly followed the admonition of the Court of Appeals that the terms of a contract between a college and a student should not be assumed. Accordingly, they have limited contractual claims to the enforcement of specific promises "'contained in the university's bulletins, circulars and regulations.'" *Papelino v. Albany Coll. of Pharm.*, 633 F.3d 81, 93 (2d Cir. 2011) (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dep't 1987)); *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (". . . only specific promises set forth in a school's bulletin, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." (citations omitted)).

In seeking a reimbursement of their "tuition," Plaintiffs are asking the Court to create a new definition of "tuition," *i.e.,* that "tuition" is a payment for the extrinsic benefits of an on-campus academic experience. The definition of "tuition" is: "payment for instruction." *Webster's 3d New Int'l Dictionary* (1993). New York courts have applied this definition when interpreting the meaning of "tuition." *Bianco v. Bianco*, 36 A.D.3d 490, 491-92 (1st Dep't 2007) (agreement to pay for "tuition" only applied to the charge for instruction). Plaintiffs' attempt to expand this definition of tuition into a broader "experience" is not supported by New York law or Hofstra publications.

A claim similar to Plaintiffs' was rejected in *Paynter v. New York Univ.*, 66 Misc. 2d 92 (1st Dep't 1971). In *Paynter*, NYU suspended classes in May 1970 following campus unrest over United States troops entering Cambodia and the deaths of students at Kent State University. There was no technology to provide remote instruction in 1970, and classes just stopped. The lower court had ordered a tuition refund because of the cancellation of 19 days of classes. The Appellate Term reversed, holding that "the services rendered by the university cannot be measured by the time spent in a classroom." 66 Misc. 2d at 92. Unlike NYU in *Paynter,* Hofstra *continued to provide instruction*. It would make no sense to require Hofstra to refund tuition where it continued instruction, when *Paynter* declined to require refunds where classes stopped altogether.

Here, Hofstra met the terms of the implied contract with its students: it continued to provide Plaintiffs with instruction by Hofstra faculty following the State-ordered shutdown of its campus, and Plaintiffs took advantage of that instruction and earned academic credits. Plaintiffs cite no requirement in the Bulletin or Catalog that instruction must be provided in a physical classroom setting, and their breach of contract claims should be dismissed. *See e.g., Romankow v. New York Univ.*, 20-cv-4616, 2021 WL 1565616, at *4 n.4 (S.D.N.Y. Apr. 21, 2021) (dismissing plaintiff's breach of contract claim because plaintiff did "not point to any express language promising the 'certain specified service' of in-person classes."); *Morales v. New York Univ.*, 20-cv-4418, 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021); *Zagoria v. New York Univ.*, 20-cv-3610, 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021); *Shak v. Adelphi Univ.*, 20-cv-1951, 2021 WL 3030069 (E.D.N.Y. July 15, 2021); *Hewitt v. Pratt Institute*, 20-cv-2007, 2021 WL 2779286 (E.D.N.Y. July 2, 2021); *Beck v. Manhattan Coll.,* 20-cv-3229, 2021 WL 1840864 (S.D.N.Y. May 7, 2021).

## A. *Stellato Action – Plaintiffs Have Not Sufficiently Alleged a Breach of Contract*

Plaintiffs in the *Stellato Action* allege that they entered into a contract with Hofstra for "in-person instruction, and … related access, benefits and services," and that Hofstra breached the

alleged contract when it moved to remote instruction. *AC*, ¶¶ 1-4. The *Stellato* Plaintiffs seek recovery of damages measured as "the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since Defendant transitioned to online instruction and shut down its campus beginning in or around March 9, 2020." *AC*, ¶ 111.

Plaintiffs have gone to great lengths in their attempt to piece together language sufficient to allege a specific promise of "in person education." They cite to a "Class Schedule" that appears on Hofstra's "printable bills" for the proposition that Hofstra promised "on-campus" and "in-person" instruction. The AC includes a screen shot of a Class Schedule that includes the following information: CRN, subject, course number, section, Course Title, number of credits, days of instruction, time of class, building and room. *AC*, ¶ 40.

Only days ago, Judge Kuntz dismissed a breach of contract claim alleged by a student seeking a tuition refund from Adelphi University. *Shak*, 2021 WL 3030069. The plaintiff in *Shak* alleged that Adelphi's course catalog created an implied contract for an in-person education. Judge Kuntz rejected those allegations:

> The course catalogue contains informational guidance regarding, for example, a course's instructor, location, and schedule, but there are no express statements promising that these aspects of a course were not subject to change. Nor has Plaintiff identified any statement in which Adelphi "relinquished its authority" to alter the modality of its course instruction. *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1985); *see also [Paynter*, 319 N.Y.S.2d at 894] (reversing tuition refund when classes were suspended due to student demonstrations, because the "circumstances of the [university-student] relationship permit the implication that the professor or the college may make minor changes" to the services rendered by the university). "The allegation that [Adelphi] made a promise to provide in-person educational services, based on its course descriptions, is not comparably specific to a promise to provide a certain number of instructional hours or facilities of a certain caliber." *Hassan v. Fordham Univ.*, 20-CV-3265, 2021 WL 293255, at *5–6 (S.D.N.Y. Jan. 28, 2021) (Wood, J.), *amended in part*, 20-CV-3265, 2021 WL 1263136 (S.D.N.Y. Apr. 6, 2021) (Wood, J.) (citing *Ansari v. New*

*York Univ.*, 96-CV-5280, 1997 WL 257473, at *2 (S.D.N.Y. May 16, 1997) (Mukasey, J.)).

2021 WL 3030069, at *3. Recognizing, as they must, that the class schedule does not form a promise under New York law, Plaintiffs point to Hofstra's Distance Learning ("DL") webpage for the proposition that "on-campus and online options for the 2019-2020 school year were not interchangeable." *AC*, ¶¶ 22- 23. Plaintiffs allege that by describing DL courses as being "taught entirely online," (*AC*, ¶ 26), Hofstra "emphasized" the difference between on-campus and online education. *AC*, ¶ 25. Finally, Plaintiffs point to the difference in the cost of tuition and fees for traditional programs versus programs that are offered "online," such as the Online L.L.M. degree and the Executive M.B.A. program and the "Online M.B.A." *AC*, ¶¶ 28-31.[20]

It bears noting that the transition to remote instruction in Spring 2020 was not the same as instruction offered through online programs. Rather, the remote courses during Spring 2020 consisted of the same curriculum that was taught before the transition, by the same Hofstra faculty, at the same student to faculty ratio prior to the transition. In other words, what occurred in Spring 2020 is fundamentally different from the DL and online degree programs alleged by Plaintiffs.

More importantly, none of Plaintiffs' references create a promise that all courses would be taught "in-person" or "on campus" at all times. That Hofstra offered certain courses in an online format prior to the pandemic does not support Plaintiffs' breach of contract claim that alleges they were entitled to exclusively in-person instruction. *In re Columbia*, 2021 WL 790638, at *4 ("To the extent that Columbia advertised certain academic programs as 'fully online' . . . students in such programs might be able to claim a contractual entitlement to exclusively online instruction. It does not follow, however, that students in *other* programs such as Plaintiffs, were contractually

---

[20] Plaintiffs also allege that the description of courses offered during the January Session contained in the Undergraduate Catalog (which references "on-campus and off-campus courses") distinguishes between the different types of programs. *AC*, ¶ 26. Of course, there are no allegations concerning the January Session at issue in this action.

12

entitled to exclusively in-person instruction."); *Morales*, 2021 WL 1026165, at *1 (plaintiffs' allegations that NYU offered online programs that plaintiffs "'purposefully did not apply to'" were insufficient to state a claim for breach of contract); *Pinkney v. State of New York*, Claim No. 135251 (Ct. Cl. May 4, 2021) (same).[21]

Plaintiffs further point to Hofstra's "marketing" materials and website for the proposition that students elected to attend Hofstra rather than another institution because of the emphasis on the benefits of Hofstra's campus life. Plaintiffs allege that Hofstra's website marketed the campus location close to New York City and its resources and benefits, which constituted a promise of in-person education. *AC*, ¶¶ 33-37. Courts have uniformly held that these "references to campus life" are "nothing more than 'opinion or puffery' which are insufficiently specific to constitute an actionable promise." *Pinkney*, p. 11 (quoting *Bader v. Siegel*, 238 A.D.2d 272 (1997)); *Shak*, 2021 WL 3030069, at *4 (marketing of an "'on-campus experience as a benefit of enrollment on [Adelphi's] website,'" was "too vague to support a breach of contract action. In these statements, Adelphi does not relinquish their inherent authority to modify the form of classroom instruction, nor does Adelphi specifically promise a certain number of on-campus instructional hours"); *Hewitt*, 2021 WL 2779286, at *3 (website statements were "opinion or puffery that [are] too vague to be enforced as a contract" (internal citations omitted) (alterations in original)); *Beck*, 2021 WL 1840864, at *2 (references to the benefits of being located in New York City in the College's marketing materials and the website did not create a specific promise for in-person instruction).

Further, the *Stellato* Plaintiffs admit they cannot sufficiently allege a specific promise by Hofstra with respect to any particular fee. *AC*, ¶ 29 (characterizing tuition and fees as "comprehensive costs"). While Plaintiffs allege that Hofstra "promised" to provide certain

---

[21] The *Pinkney* decision is appended hereto as ***Appendix A*** for the Court's ease of reference.

"services," (*AC*, ¶¶ 44-46), they do not allege that they paid any particular fee in exchange for those services, nor do they allege that they did not receive a particular service. Plaintiffs' conclusory allegations that fees were related to the "on-campus experience fall[] short of the specific statements necessary to reflect a promise to provide certain in-person services in exchange for students paying those fees." *See Romankow*, 2021 WL 1565616, at *4; *see also Pinkney*, p. 11 (dismissing students' claim because "no facts are alleged from which the Court may discern that the fees charged were for services provided exclusively on campus."). Dismissal of Plaintiffs' breach of contract claim with respect to tuition and fees should similarly be granted.

### B. Migliore Action – Plaintiffs Have Not Sufficiently Alleged a Breach of Contract

The SAC's allegations fare no better. Plaintiff Migliore[22] alleges that he entered into a contract with Hofstra for "in person educational services, experiences, opportunities and other related services." *SAC*, ¶ 3. He seeks as damages "a pro-rated tuition refund of the tuition and fees they paid to Defendant for in-person educational services as well as other marketed collegiate experiences and services that were not provided." *SAC*, ¶ 31.

Plaintiff desperately attempts to state a cause of action by stringing together snippets from the Hofstra Law Handbook concerning access to the library and to the Office of Career Services ("OCS") but does not cite any language promising this access to be "in person."[23] Plaintiff points to a statement concerning the use of an ID to access the Law School Building and Law Library "through the use of the card swipes" at the entrances. *SAC*, ¶ 16 n.1. He excerpts from the

---

[22] Plaintiff Cohen in the *Stellato Action* was a student at Hofstra Law during the Spring 2020 Term. Accordingly, these arguments apply equally to her claims in that action.

[23] The SAC is not clear concerning whether Plaintiff's allegations are intended to support his breach of contract claim concerning tuition or concerning fees. To the extent Plaintiff's allegations concerning the library, OCS, computer labs, and ITS are directed toward his "fee" related claim, Hofstra's arguments apply equally.

Handbook that "[t]he Law Library is an integral part of the Law School," and describes the library's collection. *SAC,* ¶ 17. These allegations do not create a promise for in-person education.

Plaintiff then focuses on OCS, alleging that Hofstra offers "on-campus interviewing." *SAC,* ¶ 18. Plaintiff's quotation of this three-word phrase comes from a description of a program that takes place "each fall." *SAC*, ¶ 18 n.3. This language cannot form the basis of a contract for in-person education in the spring. Plaintiff cherry-picks words and phrases from the Handbook stating that Hofstra "hosts" additional recruitment activities and offers career fairs, mock interviews, mentoring, and "**on** and off-campus networking lunches and receptions…". *SAC*, ¶ 19 (emphasis in original). The Handbook does not promise that Hofstra will "host" events in any particular way, and "hosting" an event can occur in a variety of manners (and did occur remotely in the Spring of 2020).[24]

In the SAC, Plaintiff cites to the Distance Education Policy and alleges that there were no "online" law courses offered prior to the pandemic. The Distance Education Policy is a restatement of New York State's requirements for admission to the practice of law. *See Rules of the Ct. of App. for the Admission of Attorneys and Counselors of Law* §520.3(c)(6).[25] Further, "prior course of conduct" cannot form the basis of a contract between Hofstra and its students. *Hassan*, 2021 WL 293255, at *7 (rejecting that a promise to provide in-person education arose based on "custom" or the "nature of plaintiff's dealings" with Fordham); *Zagoria*, 2021 WL 1026511, at *5 (same). Plaintiff's allegations that the "distance education" reference in the Handbook created a contract

---

[24] Notably, the SAC does not allege any career services event that Plaintiff attempted to attend during the Spring 2020 Semester that was not offered.

[25] https://www.nycourts.gov/ctapps/520rules10.htm#3. As noted above, the distance education rule was waived by the Court of Appeals because of the pandemic. *See* p. 6, *supra*.

for in-person education during the Spring 2020 Semester (as the Court aptly noted on April 14) are a "huge leap," and do not create a specific promise for in-person education.

The remaining breach of contract allegations in the SAC focus on a course schedule and Plaintiff's registration information, which provide locations and times of classes. As discussed above, a course schedule is informational guidance only and does not create a specific promise that a course will at all times and under all circumstances be held in person in a particular classroom. *Pinkney*, p. 10; *Hewitt,* 2021 WL 2779286, at \*3; *Hassan*, 2021 WL 293255, at \*6; *In re Columbia*, 2021 WL 790638, at \*4.

Plaintiff makes allegations in the SAC concerning the services that are paid for by the Health Fee (*SAC*, ¶ 36), but does not allege any document from which he gleaned this information. Simply alleging it does not make it so. Plaintiff's allegations concerning the Activity Fee are even weaker. *SAC,* ¶¶ 37-38. Plaintiff alleges Hofstra was contractually obligated to provide a night owl breakfast and an ice cream social. There is no promissory language in the Handbook concerning these activities, and on their face, they are not material to the student-university relationship. Accordingly, Plaintiff's contract claims with respect to tuition and fees must be dismissed.

## C. *Hofstra Reserved Its Right to Modify Course Modalities*

In any event, Plaintiffs' breach of contract claims are subject to dismissal because Hofstra reserved its right to modify its courses.

The 2019-2020 Undergraduate Bulletin contains the following language:

> The programs of instruction, the academic calendar and personnel announced in this Bulletin are subject to change at the discretion of the administration.

The Law Catalog likewise reserves Hofstra Law's right to alter its courses:

> The Law School reserves the right to change its rules and regulations, admissions and graduation requirements, course

16

offerings, tuition, fees and any other material set forth in the Law
School Catalog at any time without prior notice.

Written into its documents, therefore, is Hofstra's right to do exactly what it did in Spring 2020 – to change the modality of instruction. *Hewitt*, 2021 WL 2779286, at *3 (holding that in light of Pratt's disclaimer, "plaintiffs cannot plausibly allege that Pratt breached its contract in violation of the catalog's statement that certain classes would be held in person."); *Romankow*, 2021 WL 1565616, at *3-4 (NYU's disclaimer language barred Plaintiff's breach of contract claim). Accordingly, for this reason, Plaintiffs' breach of contract claims (in both the *Stellato* and *Migliore Actions*) must be dismissed.

### D. Plaintiffs Allege Non-Cognizable Educational Malpractice Claims

Plaintiffs' breach of contract claims must also be dismissed because they run afoul of New York's steadfast refusal to recognize claims of "educational malpractice." Courts have repeatedly stated that "a student may not seek to avoid this rule by couching such a claim as a breach of contract claim." *Papelino*, 633 F.3d at 93 (citations omitted); *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998) ("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'") (quoting *André v. Pace Univ.*, 170 Misc. 2d 893, 896 (2d Dep't 1996)). Plaintiffs' breach of contract claims should be recognized for what they are: they allege that the remote instruction provided by Hofstra faculty did not provide as effective and valuable an education as did the on-campus instruction provided prior to the global pandemic.

Educational malpractice claims are not recognized in New York because they require courts to substitute their judgment for that of the academic officials entrusted with administering the state's colleges and universities. Accordingly, claims that ". . . ask the Court to involve itself

in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches her claims in terms of breach of contract." *Gally*, 22 F. Supp. 2d at 207; *see also Susan M. v. New York Law Sch.*, 76 N.Y.2d 241, 245 (1990) ("Strong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance.").

Here, in the face of a pandemic and a State-mandated shutdown of its campus, Hofstra's administrators exercised their judgment that effective instruction could continue remotely, and that Hofstra would award credit to students who completed the work remotely. Plaintiffs ask this Court to evaluate the instruction Hofstra faculty provided and make a different judgment. This is the exact type of review that New York courts have declined to undertake. There is no way for this Court to evaluate the value of the education provided by Hofstra other than by substituting its judgment for that of Hofstra's administrators. In *Paladino v. Adelphi University*, 89 A.D.2d 85 (2d Dep't 1982), the Second Department ordered the dismissal of breach of contract claims because they ran afoul of the refusal by New York courts to entertain claims of educational malpractice.

> Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction. It is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution. There is nothing novel about a contract action that would permit for judicial intervention into the process of learning. For in effect, the claim still requires judicial displacement of complex educational determinations made by those charged with the responsibility to instruct the child . . .
>
> ****
>
> The courts should not become engaged in determining the propriety of the course instruction adopted by a private school . . . Simply put, the courts should refrain from becoming overseers of the learning process.

89 A.D.2d at 89-91. The Court cannot evaluate whether or to what extent any service received by Plaintiffs was "diminished" without delving into a prohibited evaluation of Hofstra's educational judgments. For this additional reason, Plaintiffs' breach of contract claims must be dismissed.

**POINT II**
**THE UNJUST ENRICHMENT CLAIM IN *MIGLIORE* MUST BE DISMISSED**

Plaintiff Migliore alleges that he paid tuition and fees for "in-person education" and that Hofstra "should be required to disgorge all profits resulting from such overpayments and establish a constructive trust" from which Plaintiff and the purported class members can be compensated. *SAC*, ¶¶ 78-85. Plaintiff's unjust enrichment claim must be dismissed because it is nothing more than a restatement of his breach of contract claims. *See, e.g., Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015) ("Plaintiffs' unjust enrichment claims are 'indistinguishable from [their] … claim[s] for breach of contract, and must be dismissed as duplicative of the contract claim[s]'" (citation omitted) (alterations in original)).

Hofstra does not dispute the existence of a contract; rather, the intrinsic value of an "on campus experience" is not one of the terms of that contract. *Cf. Lindner v. Occidental Coll.*, CV20-8481-JFW (RAOx), 2020 WL 7350212, *9, n.3 (C.D. Cal. Dec. 11, 2020). Plaintiff cannot add an otherwise nonexistent term into a contract by asserting an unjust enrichment claim. Accordingly, the unjust enrichment claim cannot survive a Rule 12(b)(6) motion, even in the face of an insufficiently plead breach of contract claim. *Shak*, 2021 WL 3030069, at *5; *In re Columbia*, 2021 WL 790638, at *9 (rejecting plaintiffs' argument that they may plead unjust enrichment in the alternative because the parties did not dispute that they shared a contractual relationship).

Further, a claim for unjust enrichment requires that a plaintiff "establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). Plaintiff has

alleged no facts showing that "equity and good conscience" requires a refund. Hofstra did not close its campus on a whim; rather, it did so to protect the health of its students, faculty, and staff during the pandemic, and as required by orders of New York State. Hofstra faculty quickly transitioned to remote instruction and began such instruction immediately following the scheduled Spring Break, and Hofstra's faculty failed to provide him with instruction during the balance of the Spring Term. Nothing in equity or good conscience requires a refund of tuition or fees. Accordingly, the unjust enrichment claims must be dismissed. *Hassan*, 2021 WL 293255, at *10-11; *In re Columbia*, 2021 WL 790638, at *9; *Zagoria*, 2021 WL 1026511, at *5; *Goldberg v. Pace Univ.*, 20-cv-3265, 2021 WL 1565352, at *12 (S.D.N.Y. Apr. 21, 2021).

## **CONCLUSION**

For the foregoing reasons, the Court should Hofstra's motions to dismiss the Amended Complaint in the *Stellato Action* and the Second Amended Complaint in the *Migliore Action*.

Dated:  July 26, 2021

BOND, SCHOENECK & KING, PLLC

By:  ___*s/Suzanne Messer*_____
      Suzanne M. Messer, Esq.
      Stephanie M. Campbell, Esq.
One Lincoln Center
Syracuse, New York 13202
(315) 218-8000
Email:  smesser@bsk.com
Email:  scampbell@bsk.com

12782495

# APPENDIX A

STATE OF NEW YORK     COURT OF CLAIMS

FILED

05/04/2021

NY COURT OF CLAIMS
ALBANY NY

MICHELLE PINKNEY and
MICHAEL KENNEDY, on behalf of
themselves and all others similarly
situated,

                 Claimants,

-v-

STATE OF NEW YORK,[1]

                 Defendant.

**DECISION AND
ORDER**

Claim No.    135251
Motion No.   M-96325

---

BEFORE:          **HON. FRANCIS T. COLLINS**
                   **Judge of the Court of Claims**

APPEARANCES:      **For Claimants:**
                   **Bursor & Fisher, P.A.**
                   **By: Joseph I. Marchese, Esq.**
                   **By: Max S. Roberts, Esq.**

                   **For Defendant:**
                   **Honorable Letitia James, Attorney General**
                   **By: Erica V. Pritchard, Esq., Assistant Attorney General**

---

Claimants Michelle Pinkney (Pinkney) and Michael Kennedy (Kennedy) bring this class

action on behalf of themselves and all those similarly situated seeking pro-rata refunds of the

tuition and fees paid to the State University of New York (SUNY) and the State University of

New York at Albany for in-class instruction and an on-campus experience they did not receive

after campus closures caused by the Corona-19 pandemic. In this pre-answer dismissal motion,

---

[1] The caption has been amended *sua sponte* to reflect the only properly named defendant.

defendant moves to dismiss the claim pursuant to CPLR 3211 (a) (2) and (7) on the grounds it fails to state a cause of action and to meet the pleading requirements of Court of Claims Act § 11 (b).

Claimants allege that in consideration for the payment of tuition and fees the defendant agreed to provide in-person educational services, experiences and related services to Kennedy and the putative class in accordance with promises made in defendant's various publications. Kennedy allegedly paid approximately $2,500 in tuition and fees to defendant for the 2020 Spring Semester. Pinkney, Kennedy's mother, allegedly paid $3,535 in tuition for the Spring Semester 2020, none of which has been refunded (*see* defendant's Exhibit A, Claim, ¶ 22). Both allege causes of action for breach of contract, unjust enrichment and money had and received.[2]

The first publication claimants rely upon in support of their various breach of contract and quasi-contract causes of action is SUNY Albany's Course Catalog setting forth the courses offered and the instructor, days and times during which the courses would be held, and their locations (*id*. at ¶ 7). Kennedy's Spring 2020 semester schedule allegedly shows that the classes in which he enrolled were all in-person classes (*id*. at 24). According to the claim, the Course Catalog allows students to perform on-line searches for classes based upon whether the class is "Only NON-Fully Online Courses" or "Fully Online Courses" (*id*. at ¶ 8). In addition, it is alleged that the Academic Policies inform students that they " 'are expected to attend all classes and all examinations.' " and that " 'Faculty have the prerogative of developing an attendance policy whereby attendance and/or participation is part of the grade' " (*id*. at ¶ 9). Claimants also

---

[2] Claimants withdrew their conversion cause of action.

allege in the claim that SUNY Albany's Faculty Handbook provides that instructors " 'are responsible for meeting their classes regularly and at scheduled times according to the University calendar' " and instructors of online classes are required to "meet University standards for excellence in online teaching" (*id.* at ¶ 10). With respect to online classes and instructors, the Faculty Handbook allegedly states the following:

> " 'Online courses offered by the University <u>must meet University standards for excellence in online teaching</u>. Faculty who have never taught online must consult with staff from ITLAL or ITS Educational Technology Center (ETC) and <u>participate in a program in instructional design and online pedagogical approaches before offering an online course</u>. Faculty who wish to initiate an online course should contact teachonline@albany.edu or fill out [a provided form]' " (*id.* at ¶ 10, quoting Faculty Handbook at p. 27).

Claimants allege that SUNY Albany's Spring 2020 semester commenced January 22, 2020 and although it was not scheduled to conclude until May 13, 2020, Governor Cuomo announced on March 11, 2020 that classes in all SUNY schools were suspended for one week beginning March 12, 2020 as a result of the COVID-19 pandemic, and that all SUNY schools would hold classes online beginning March 19, 2020 for the remainder of the semester (*id.* at ¶¶ 11,12). Claimants allege this in effect lengthened spring break by one week and deprived students of class instruction that defendants agreed to provide because the academic year was not proportionately extended (*id.* at ¶¶ 13, 14).

Apart from the one-week closure, claimants also allege the defendant deprived them and the putative class of educational services, facilities, access and/or opportunities:

> "The online learning options provided to students of SUNY Schools were subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students were deprived of the opportunity for

> collaborative learning and in-person dialogue, feedback, and critique. The
> remote learning options were in no way the equivalent of the in-person
> education that Claimants and the putative class members contracted and
> paid for" (*id.* at ¶ 17; see also *id.* at ¶¶ 43,44).

Claimants allege that for approximately 50% of the Spring 2020 semester, SUNY schools did not provide in-person education. Inasmuch as claimants enrolled in an in-person educational experience which they did not receive for approximately one-half of the semester, claimants "seek, for themselves and Class members, Defendants' disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online, and campus services ceased being provided" (*id.* at ¶ 21; *see also* ¶ 46). It is further alleged that none of the classes Kennedy signed up for were online classes and he therefore allegedly lost the benefit of "in-person instruction, meaningful student presentations, peer collaboration, and access to university facilities, including laboratory equipment" (Claim, ¶ 21).

With respect to fees, claimants allegedly paid the following: (i) comprehensive service fee - $696.50; (ii) intercollegiate athletics fee - $307.50; (iii) academic excellence fee- $262.50; (iv) recreation and campus life fee - $104.00; (v) student activity fee - $110; (vi) additional biology fee - $45; (vii) student-alumni partnership fee- $30 (*id.* at ¶ 23). Claimants allege that none of the fees paid have been refunded.

With certain limited exclusions,[3] claimants seek to represent a class which they define as "all people who paid SUNY Schools Spring Semester 2020 tuition and/or fees for in-person educational services that SUNY Schools failed to provide, and whose tuition and fees have not been refunded (the 'Class')" (*id.* at ¶ 47).

Defendant initially seeks dismissal of the claim on the ground the failure to name all individual members of the putative class, together with the required particulars relating to these individuals (time when and place where the claim arose, the items of damage sustained by the putative class members) runs afoul of the pleading requirements of Court of Claims Act § 11 (b).

Section 11 (b) of the Court of Claims Act requires that a claim state "the time when and the place where such claim arose, the nature of same, the items of damage or injuries claimed to have been sustained and, except in an action to recover damages for personal injury, medical, dental or podiatric malpractice or wrongful death, the total sum claimed." Although the State waived its immunity from liability "and consent[ed] to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations," waiver is expressly conditioned upon compliance with the limitations set forth in Article II of the Court of Claims Act (Court of Claims Act § 8), including the pleading requirements contained in § 11 (b), which are "substantive conditions upon the State's waiver of sovereign immunity" (*Kolnacki v State of New York*, 8 NY3d 277, 280 [2007], *rearg denied* 8 NY3d 994 [2007], quoting *Lepkowski v State of New York*, 1 NY3d 201, 207 [2003]; *see also*

---

[3] Claimants specifically exclude from the class "Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family" (claim, ¶ 47).

*Kobrin v State of New York*, 144 AD3d 1542 [4th Dept 2016]; *Sommer v State of New York*, 131

AD3d 757, 758 [3d Dept 2015]; *Morra v State of New York*, 107 AD3d 1115, 1116 [3d Dept

2013]). Since the statutory requirements of the Court of Claims Act must be strictly construed

(*Lepkowski v State of New York*, 1 NY3d at 206-207; *Young v State of New York (Univ. Hosp. of*

*Brooklyn-Downstate Med. Ctr.)*, 82 AD3d 972, 973 [2d Dept 2011]), the failure to fulfill any one

of the § 11 (b) pleading requirements constitutes a jurisdictional defect requiring dismissal.

Although class actions are not prohibited in the Court of Claims, it is the general

consensus among Court of Claims judges that each member of the putative class must be

identified in the claim (*Batthany v The State of New York*, Ct Cl, May 5, 2014, Milano, J., claim

No. 116758, UID No. 2014-041-029; *Matter of Arroyo v State of New York*, 12 Misc 3d 1197

[A], 2006 NY Slip Op 51606[U] [Ct Cl, 2006]; *Woolley v The State of New York*, Ct Cl, July 2,

2001, Collins, J., claim No. 103781, UID No. 2001-015-160, *affirmed* 299 AD2d 699 [3d Dept

2002]; *but see Bertoldi v State of New York*, 164 Misc 2d 581 [Ct Cl, 1995]). In addition, at least

two appellate division cases address the issue. In *Brown v State of New York* (250 AD2d 314 [3d

Dept 1998]) the Appellate Division, Third Department, found that claimants satisfied the

requisite criteria for class certification because the putative class members, who were not named

in the claim, had filed notices of intention which were treated as claims pursuant to Court of

Claims Act § 10 (8). Thus, the requirements of Court of Claims Act § 11 (b) were met because

the particulars for each of the putative class members were alleged.

In *Weaver v State of New York* (82 AD3d 878 [2d Dept 2011], *lv dismissed* 17 NY3d

778 [2011], *and lv denied* 19 NY3d 804 [2012]), the Appellate Division, Second Department

held that "class actions brought in the Court of Claims must satisfy all of the jurisdictional

requirements set forth in section 11 (b) and that each member must be a named claimant in a filed claim" (*id.* at 879; *see also*). While claimants contend that dismissal of the class claims at this point is premature because they have not yet moved for class certification (*see* CPLR 902), the Court need not await a class certification motion inasmuch as the failure to name all class members is a jurisdictional defect appropriately addressed in a motion pursuant to CPLR 3211 (a) (2) (*see Weaver, supra*) and nothing in CPLR article 9 requires a different result. Accordingly, the claim is dismissed to the extent it includes putative class members.[4]

The Court will now address the issue of whether the individual claims of *Pinckney* and *Kennedy* state a cause of action. "When assessing whether a complaint states a cause of action for purposes of a motion to dismiss pursuant to CPLR 3211(a)(7), 'the pleading is to be given a liberal construction, the allegations contained within it are assumed to be true and the plaintiff is to be afforded every favorable inference' " (*Tenney v Hodgson Russ, LLP*, 97 AD3d 1089, 1090 [3d Dept 2012, quoting *Simkin v Blank*, 19 NY3d 46, 52 [2012]).

When a university accepts a student for admission, it is implied that the university must award him or her a degree if the student complies with the terms prescribed by the institution (*Matter of Carr v St. John's Univ., N.Y.* 17 AD2d 632, 633 [2d Dept 1962], *affirmed* 12 NY2d 802 [1962]; *Jones v Trustees of Union Coll.*, 92 AD3d 997 [3d Dept 2012]; *Baldridge v State of New York*, 293 AD3d 941 [3d Dept 2002], *lv denied* 98 NY2d 608 [2002]; *Papelino v Albany*

---

[4] Claimant indicated in opposition to defendant's motion that pre-certification discovery should be permitted to ascertain the identity and particulars relevant to the individual class members, citing *Desrosiers v Perry Ellis Menswear, LLC* (30 NY3d 488 [2017]). *Desrosiers* dealt only with whether or not pre-certification notice to putative class members is required for a proposed dismissal, discontinuance, or compromise. It did not alter the jurisdictional limitations of the Court of Claims Act or otherwise affect the long held proposition that a jurisdictionally defective claim may not be cured by amendment (*Hogan v State of New York*, 59 AD3d 754 [3d Dept 2009]).

*College of Pharmacy of Union Univ.*, 633 F3d 81 [2d Cir 2011]). Although the rights and

obligations set forth in a university's bulletins become part of the contract (*Prusack v State of*

*New York*, 117 AD2d 729 [2d Dept 1986]), "only specific promises set forth in a school's

bulletins, circulars and handbooks, which are material to the student's relationship with the

school, can establish the existence of an implied contract" (*Keefe v New York Law School*, 71

AD3d 569, 570 [1st Dept 2010]; *see also Downey v Schneider*, 23 AD3d 514, 516 [2d Dept

2005]["the terms of the contract are set forth, for the most part, in the institution's catalogue and

other publications"]; *Vought v Teachers Coll., Columbia Univ.*, 127 AD2d 654, 655 [2d Dept

1987]["The rights and obligations of the parties as contained in the university's bulletins,

circulars and regulations made available to the student, become a part of this contract"]). The

specificity requirement is consistent with public policy against judicial interference in matters

relating to the control and management of educational institutions (*see generally Matter of Susan*

*M. v New York Law School*, 76 NY2d 241 [1990]; *Hoffman v Board of Educ. of City of N.Y.*, 49

NY2d 121 [1979]). Cases in which students sought the return of tuition and fees arising from

mandated closures brought about by the COVID-19 pandemic provide guidance on the degree of

specificity necessary to state a breach of contract cause of action.

    In *Bergeron v Rochester Inst. of Tech.* (US Dist Ct, WD NY, 20-CV-6283, 2020 WL

7486682, Siragusa, J., 2020) it was alleged that the college offered "both in-person, hands-on

programs, and fully online distance learning programs," which it markets and prices as separate

and distinct products (*id.* at *1). The college also promoted "face-to-face interaction with

professors, mentors, and peers" and promised to provide "undergraduates the opportunity to work

directly with faculty members in their labs to investigate, explore and . . . learn hands-on skills

that become the foundation of scientific research" (*id.*). In addition, the court noted that the college's publications were full of references to the on-campus experience, student activities, campus amenities, class size, etc. Lastly, the college promised students access to "some of the finest laboratories, technology and computing facilities available on any university campus" as well as offering a post office, laundry rooms, game rooms and a fitness facility (*id.* at *2). The Court found these allegations sufficiently specific to support a claim for breach of contract (*see also Ford v Rensselaer Polytechnic Inst.*, US Dist Ct, ND NY, 1:20-CV-470, 2020 WL 7389155, Hurd, J., 2020 [allegations were sufficiently specific where RPI claimed in its college Plan that it "will . . . [o]ffer a complete college experience", that its program is designed to improve counseling, academic skills, and other benefits that "originate with the residential setting" and because the program is "built around a time-based clustering and residential commons program" all first and second year students were required to live on campus]; *Metzner v Quinnipiac Univ.*, US Dist Ct, 3:20-cv-00784, 2021 WL 1146922, Dooley, J., 2021 at *10. [College Bulletin and website touted such features as "state-of the-art facilities," "outdoor spaces," "classroom and immersive experiential learning" and the "beauty of New England").

Cases in which college publications were insufficiently specific to support a breach of contract claim include *Morales v New York Univ.* (US Dist, SD NY, 20 Civ 4418, Daniels, J., 2021) in which the university's Course Catalog identified the building and room number for each listed course and permitted searches based upon whether the class was in person or online; *Zagoria v New York Univ.* (US Dist Ct, SD NY, 20 Civ 3610, Daniels, J., 2021) where the college touted " 'direct engagement with industry through the nation's leading conferences, regular speakers, internships and more' " and that the course work would include visits to Paris

and Amsterdam; and *Hassan v Fordham Univ.* (US Dist, SD NY, 20-CV-3265, 2021 WL 1263136, Wood. J., 2021) in which the course catalog identified courses offered as well as times, instructors and locations.

Here, assuming the allegations contained in the claim are true and affording the claimants the benefit of every favorable inference, the claim fails to state a breach of contract cause of action. Like the facts in *Morales* (US Ct, SD NY, 20 Civ 4418, Daniels, J., 2021) and *Hassan* (US Dist Ct, SD NY, 20-CV-3265, 2021 WL 1263136, Wood, J., 2021) claimants' allegation that the course catalog stated the days, times and locations of classes is insufficiently specific to support a claim for breach of an implied contract to provide only in-person instruction. Nor does the reference to "Only NON-Fully Online Course" classes in the Course Catalog search bar constitute a specific promise of in-person instruction. First, this search mechanism does not rule out partial on-line courses. Moreover, the Court in *Zagoria* made clear that "breach of contract actions between a student and university 'must be grounded in a text' " and "the presentation of different instruction options is not an express promise that NYU will be limited in the future from changing instruction modalities" *(Zagoria*, at * 9).

Claimants' allegations referencing the Academic Policies of informing students that they are "expected to attend all classes and examinations" and that "Faculty have the prerogative of developing an attendance policy whereby attendance and/or participation is part of the grade" (defendant's Exhibit A, claim, ¶ 9) similarly falls short of constituting specific promises for in-person classes. These same statements apply equally to on-line classes and are, therefore, too general and vague to support a claim for breach of a promise of in-person instruction. For these same reasons the statements in the Faculty Handbook indicating that instructors "are responsible

for meeting their classes regularly and at scheduled times according to the University calendar"

and that online classes "must meet University standards for excellence in online teaching" are too

vague to constitute enforceable promises (*id.* at ¶ 10).

To the extent the claim seeks reimbursement for the one-week closure which occurred on

account of the COVID-19 pandemic, the claimants do not allege Kennedy's entitlement to a

degree was compromised or otherwise delayed.  Inasmuch as "the services rendered by [a]

university cannot be measured by the time spent in a classroom. . . . [t]he insubstantial change

made in the schedule of classes does not permit recovery of tuition" (*Paynter v New York Univ.*,

66 Misc 2d 92 [App Term 1st Dept 1971]).

Lastly, the references to campus life contained in SUNY Albany's marketing materials

(defendant's Exhibit A, claim, ¶ 41) are either overly vague or nothing more than "opinion or

puffery" which are insufficiently specific to constitute an actionable promise (*Bader v Siegel*, 238

AD2d 272 [1997]; *see also In Re Columbia Tuition Refund Action v Pace Univ.*, US Ct, SD NY,

20-CV-3208, 2021 WL 790638, Furman, J., 2021 *at * 3*).  As such, no cause of action is stated

for breach of contract with respect to the tuition payments.

A similar conclusion is reached with respect to fees.  No facts are alleged from which the

Court may discern that the fees charged were for services provided exclusively on campus (*see*

*Morales v New York Univ.*, US Dist Ct, SD NY, 20-CV-4418, Daniels, J., 2021 at * 3;

*cf. Hassan v Fordham Univ.*, US Dist Ct, SD NY, 20-CV-3265, 2021 WL 1263136, Wood, J.,

2021 at *3 [claimants alleged in a proposed amended complaint that the technology fee was

directly related to promises made by Fordham to provide students with on-campus computing

and that on one particular campus "[w]hen classes are not in session, most of these [computer]

labs are open to all members of the University community with a valid ID"]). Equally likely is

the conclusion that the fees charged were to support certain services throughout the year,

regardless of whether or not classes were intended exclusively for online or in-person instruction

(*see Bahrani v Northeastern Univ.*, US Dist Ct, D MA, 20-10946-RGS, 2020 WL 7774292,

Stearns, J., 2020 *at* * 3). Claimants therefore failed to allege facts sufficient to support a breach

of contract action for reimbursement of fees.

The Court now turns to claimants' quasi-contractual causes of action alleging claims for

unjust enrichment and for money had and received. With respect to unjust enrichment, the Court

of Appeals in *Mandarin Trading Ltd. v Wildenstein* (16 NY3d 173, 182 [2011]) succinctly set

forth the elements of such a cause of action, stating:

> " 'The essential inquiry in any action for unjust enrichment . . . is whether
> it is against equity and good conscience to permit the defendant to retain
> what is sought to be recovered' (*Paramount Film Distrib. Corp. v State of
> New York*, 30 NY2d 415, 421 [1972]). A plaintiff must show 'that (1) the
> other party was enriched, (2) at that party's expense, and (3) that "it is
> against equity and good conscience to permit [the other party] to retain
> what is sought to be recovered" ' " (*Citibank, N.A. v Walker*, 12 AD3d
> 480, 481 [2d Dept 2004]; *Baron v Pfizer, Inc.*, 42 AD3d 627, 629-630 [3d
> Dept 2007]).

The mere fact that a benefit is bestowed is insufficient (*Goel v Ramachandran*, 111 AD3d

783,791 [2d Dept 2013]; *Clark v Daby*, 300 AD2d 732, 732 [3d Dept 2002], *lv denied* 100 NY2d

503 [2003]). "Generally, courts will look to see if a benefit has been conferred on the defendant

under mistake of fact or law, if the benefit still remains with the defendant, if there has been

otherwise a change of position by the defendant, and whether the defendant's conduct was

tortious or fraudulent" (*Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421

[1972], citing Restatement, Restitution, ss 1, 142, esp. Comment b; *id.*, s 155, including Comment b; *see also Schoch v Lake Champlain OB-GYN, P.C.*, 184 AD3d 338, 344 [3d Dept 2020], *lv granted* 35 NY3d 918 [2020]). Here, it is not alleged that the defendant's conduct was tortious or fraudulent. Nor are there specific factual allegations that the enrichment was inequitable or unjust. As stated previously, claimants failed to plead specific facts indicating that either tuition or fees were directly related to in-person educational services (*see Hassan v Fordham Univ.*, Dist Ct, SD NY, 20-CV-3265, 2021 WL 1263136, Wood, J., 2021 at *11). Consequently, claimants failed to state a cause of action for unjust enrichment.

For similar reasons claimant's cause of action for money had and received also fails to state a cause of action. A claim for money had and received is "an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another" (*Parsa v State of New York*, 64 NY2d 143, 148, [1984], *rearg denied* 64 NY2d 885 [1985]). " 'The remedy is available if one [person] has obtained money from another, through the medium of oppression, imposition, extortion or deceit, or by the commission of a trespass' " (*OneWest Bank, FSB v Deutsche Bank Natl. Trust Co.*, 186 AD3d 92 [1st Dept 2020], *lv denied* 35 NY3d 917 [2020], quoting *Parsa* at 148). None of the circumstances supporting a cause of action for money had and received are alleged as a basis for the claim in this case. It is not alleged that the defendant obtained claimants' money through deceit or wrongdoing and, as indicated previously, there exists no clear expression in the defendant's catalogs or brochures that tuition or fees were intended exclusively for, or in connection with, in-person instruction. Accordingly, the cause of action for money had and received fails to state a cause of action.

Based on the foregoing, defendant's motion is granted and the claim is dismissed.

Saratoga Springs, New York
April 29, 2021

FRANCIS T. COLLINS
Judge of the Court of Claims

Papers Considered:

1.    Notice of Motion, dated December 9, 2020;
2.    Affirmation of Erica V. Pritchard, Esq., dated December 9, 2020, with exhibits;
3.    Defendant's memorandum of law, dated December 9, 2020;
4.    Affirmation of Joseph I. Marchese, Esq., dated February 23, 2021, with Exhibits A-X;
5.    Claimants' memorandum of law, dated February 23, 2021;
6.    Reply affirmation of Erica V. Pritchard, Esq., dated March 15, 2021;
7.    Reply memorandum of law, dated March 15, 2021;
8.    Affirmation of Janet M. Thayer, Esq., dated March 15, 2021.