**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

GABRIEL STELLATO, HANNAH
BUCKLEY, REBEKAH COHEN, IMANI
SCHULTERS, MIAH LATVALA, and
MIKAYLA FALLON, individually and on
behalf of all others similarly situated,

         Plaintiffs,

  v.

HOFSTRA UNIVERSITY,

         Defendant.

No. 2:20-cv-01999-GRB-ARL

Judge Gary R. Brown

Magistrate Arlene Rosario Lindsay

---

### THE *STELLATO* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(c)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND....................................................................................................2

LEGAL STANDARD...............................................................................................................5

ARGUMENT............................................................................................................................5

    I.      PLAINTIFFS PLAUSIBLY STATE A BREACH OF CONTRACT CLAIM .......5

          A.      The Court's prior finding that the Complaint states a plausible claim for
breach of contract is law of the case. ...........................................................5

          B.      Plaintiffs plausibly allege Hofstra breached its contract with Plaintiffs......6

          C.      Plaintiffs sufficiently state a breach of contract for services paid for by
student fees.................................................................................................13

          D.      Hofstra's purported vague disclaimer language is irrelevant to the
breach of contract claims. ..........................................................................14

    II.     PLAINTIFFS ALLEGE THAT HOFSTRA BREACHED CONTRACTS FOR
IN-PERSON EDUCATION AND EXPERIENCES, NOT EDUCATIONAL
MALPRACTICE. ................................................................................................18

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Annuity v. Tightseal Constr. Inc.*,
No. 17 CIV. 3670 (KPF), 2018 WL 3910827 (S.D.N.Y. Aug. 14, 2018) ................................5

*Ansari v. New York Univ.*,
No. 96 Civ. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 12, 1997) ...................18, 19, 20

*Bergeron v. Rochester Inst. of Tech.*,
No. 20-CV-6283 (CJS), 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020)....................11, 15, 16

*Booth v. Molloy Coll*,
No. 608750/2020, 2021 N.Y. Misc. LEXIS 4583 (N.Y. Sup. Ct., Nassau
County Aug. 10, 2021)..........................................................................................................11

*Brittain v. Trustees of Columbia Univ. in the City of New York*,
No. 20-cv-9194 (PKC), 2021 WL 3539664 (S.D.N.Y. Aug. 11, 2021) .......................7, 11, 19

*In re Columbia*,
No. 20-cv-3210 (JMF), 2021 WL 790638 (S.D.N.Y. Feb. 26, 2021) .....................................14

*Deen v. New Sch. Univ.*,
No. 05 Civ. 7174 (KMW), 2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007).............................17

*Durbeck v. Suffolk Univ.*,
No. CV 20-10985-WGY, 2021 WL 2582621 (D. Mass. June 23, 2021) ................................15

*Espejo v. Cornell Univ.*,
No. 3:20-CV-467 (MAD/ML), 2021 WL 810159 (N.D.N.Y. Mar. 3, 2021) ...................11, 19

*Fittipaldi v. Monmouth Univ.*,
No. 20-05526 (MAS) (ZNQ), 2021 WL 2210740 (D.N.J. June 1, 2021)...............................16

*Flatscher v. Manhattan Sch. of Music*,
No. 20 Civ. 4496 (KPF), 2021 WL 3077500 (S.D.N.Y. July 20, 2021) ......................9, 11, 19

*Ford v. Rensselaer Polytechnic Inst.*,
507 F. Supp. 3d 406 (N.D.N.Y. 2020)........................................................................9, 11, 19

*Goldberg v. Pace Univ.*,
No. 20 Civ. 3665 (PAE), 2021 WL 1565352 (S.D.N.Y. Apr. 21, 2021)................................13

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019)........................................................................20

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020)........................................................12

*McCarthy v. Loyola Marymount Univ.*,
No. 2:20-CV-04668 (SB), 2021 WL 268242 (C.D. Cal. Jan. 8, 2021) ........20

*Mirkin v. XOOM Energy, LLC*,
931 F.3d 173 (2d Cir. 2019).........................................................................5

*Montesano v. Catholic Univ. of Am.*,
No. 20-cv-3792 (DLF), 2021 WL 2894720 (D.D.C. July 9, 2021)...............16

*Ninivaggi v. Univ. of Del.*,
No. 20-cv-1693-SB, 2021 WL 3709765 (D. Del. Aug. 20, 2021)................. *passim*

*Novio v. N.Y. Acad. of Art*,
317 F. Supp. 3d 803 (S.D.N.Y. 2018).........................................................18

*Paladino v. Adelphi Univ.*,
89 A.D.2d 85 (2d Dep't 1982).....................................................................18

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
633 F.3d 81 (2d Cir. 2011)............................................................................7

*Patel v. Contemporary Classics of Beverly Hills*,
259 F.3d 123 (2d Cir. 2001)..........................................................................5

*Patel v. Univ. of Vermont & State Agric. Coll.*,
No. 5:20-cv-61, 2021 WL 1049980 (D. Vt. Mar. 15, 2021)........................17

*Paynter v. New York Univ.*,
319 N.Y.S.2d 893 (1971)............................................................................10

*Perero v. Hyatt Corp.*,
151 F. Supp. 3d 277 (E.D.N.Y. 2015) .........................................................12

*Rus, Inc. v. Bay Indus.*,
322 F. Supp. 2d 302 (S.D.N.Y. 2003).........................................................17

*Sarinsky's Garage Inc. v. Erie Ins. Co.*,
691 F. Supp. 2d 483 (S.D.N.Y. 2010).........................................................17

*Shak v. Adelphi Univ.*,
No. 20-CV-1951 (WFK) (RML), 2021 WL 3030069 (E.D.N.Y. July 15, 2021)....................19

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007)................................................................12

*United States v. Uccio*,
    940 F.2d 753 (2d Cir. 1991)..................................................................6

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ................................................................................5

Fed. R. Civ. P. 12(b)(6)..........................................................................4, 5

Fed. R. Civ. P. 12(c) ..............................................................................4, 5

**INTRODUCTION**

Plaintiffs Gabriel Stellato, Hannah Buckley, Imani Schulters, Miah Latvala, Mikayla Fallon, and Rebekah Cohen (the "*Stellato* Plaintiffs") applied for and accepted offers of enrollment for an in-person education at Defendant Hofstra University ("Hofstra"). Despite the availability of less expensive online programs, Plaintiffs paid more for the in-person education on Hofstra's campus, including in its lecture halls, laboratories, libraries, student centers, dorms, and dining halls that Hofstra promised them. In response to COVID-19, however, Hofstra switched to online learning midway through the Spring 2020 semester and failed to refund any tuition or fees the *Stellato* Plaintiffs paid. Despite offering an objectively less valuable product, Hofstra failed to reimburse any of the tuition differential between the in-person and online learning. Hofstra also failed to reimburse mandatory fees for the portion of the Spring 2020 Semester during which students were deprived access to Hofstra's on-campus facilities.

After answering the allegations in Plaintiffs' Consolidated Class Action Complaint ("Complaint") and losing a near identical motion for judgment on the pleadings, Hofstra now files a second (and mostly duplicative) motion seeking judgment on the pleadings. But Hofstra offers nothing that should sway this Court from its previous denial of Hofstra's request to dismiss Plaintiffs' breach of contract claims (*see* ECF 25) as Hofstra continues to fall well short of the high bar necessary to obtain a judgment on the pleadings. Plaintiffs' Complaint plausibly alleges that Hofstra made specific promises in both Hofstra's written publications, and through its actions, offering in-person, campus-based classes to Plaintiffs prior to the pandemic, which under New York law are no less binding than a written contract. Moreover, Hofstra's arguments about its purported disclaimer fail. Hofstra did not state that Hofstra was permitted to switch from in-person and on-campus to an online format. Hofstra did not give Plaintiffs any reasonable

notice that could happen. And, like dozens of federal courts around the country, this Court should reject Hofstra's efforts to recast Plaintiffs' breach of contract allegations as a claim for "educational malpractice" since Plaintiffs allege that Hofstra failed to deliver specific services, i.e., in-person education and experiences that were not provided. Plaintiffs respectfully request that the Court deny Hofstra's motion in its entirety.

## FACTUAL BACKGROUND

Since 1935, Hofstra, offered and provided its students with classroom instruction on, and access to, Hofstra's physical campus in Hempstead, New York. Compl. ¶¶ 17–22 (ECF No. 17). Plaintiffs Gabriel Stellato, Hannah Buckley, Imani Schulters, Miah Latvala, and Mikayla Fallon were each full-time undergraduate students enrolled at Hofstra during the Spring 2020 semester. *Id.* ¶¶ 7–8, 10–12. Plaintiff Rebekah Cohen was a full-time law student at Hofstra during the Spring 2020 semester. *Id.* ¶ 9. Plaintiffs enrolled in and paid for educational and co-curricular experiences that Hofstra represented would be held in-person on Hofstra's campus during the Spring 2020 semester. Plaintiffs paid tens of thousands of dollars in tuition and fees, including hundreds of dollars in "Student Activity," "Technology" and "University" fees. *Id.* ¶¶ 7–12.

Before Plaintiffs enrolled in Spring 2020 classes, Hofstra noted that its in-person student cohort would receive a "full college experience" also called "the total student experience," or the "Hofstra experience." *Id.* ¶¶ 35–37. Hofstra promised Plaintiffs—not only in its bulletins, circulars, regulations, catalogs, and other publications, but also by its actual practices—that they would receive in-person instruction on Hofstra's campus (*id.* ¶¶ 2, 7–12, 33, 38–40, 46) with access to a wide range of specific services. *Id.* ¶¶ 39, 79, 92, 94. For example, Hofstra promised:

- "excellent library resources with extensive online and print collections," including "walk-up reference services" and "private, one-on-one research consultations by appointment," *id.* ¶¶ 34, 43;

- "state-of-the-art classrooms, learning and laboratory facilities," *id*. ¶ 34;

- "technology support," including "over 50 printers in 30 locations across campus" and "[f]ree wireless web access from everywhere on campus," *id*. ¶¶ 34, 41, 46 (emphasis in original);

- career development "in-person" workshops, "field trips," and "on-campus interview programs," *id*. ¶¶ 42, 45;

- on-campus employment opportunities; *id*. ¶ 44;

- recreational facilities and programming, including "free access to [Defendant's] state of the art fitness center and Olympic-size indoor pool," *id*. ¶¶ 44–46 (emphasis in original);

- student leadership and engagement programming, including the opportunity to participate "in one or more of the nearly 200 clubs and organizations" and "a robust Greek community," *id*. ¶¶ 44, 46;

- free admission to "hundreds of conferences, lectures, workshops, cultural programs, seminars, concerts, and social events that take place at Hofstra each semester" and "[r]egular visits by world-renowned artists, speakers and political leaders," *id*. ¶¶ 44, 46;

- free admission to approximately 150 intercollegiate events, *id*. ¶¶ 45–46;

- "[f]ree trips to NYC" and a "campus shuttle that provides free rides to the Long Island Rail Road and bus hubs (hourly), local shopping and entertainment venues," *id*. ¶ 46 (emphasis in original); and

- free parking on-campus, *id*. ¶ 46.

Besides the in-person instruction and experiences that Hofstra offered Plaintiffs, which Plaintiffs accepted and which Hofstra provided until March 2020, Hofstra offered a few "Distance Learning" programs, which were "taught entirely online." *Id.* ¶¶ 23–31. Hofstra specifically distinguished between these two discrete options by marketing each through separate web pages. Hofstra charged *lower* tuition and fees for distance learning than for on-campus instruction and experiences. *Id.* Before the beginning of the Spring 2020 semester, Plaintiffs "enrolled specifically and exclusively in Hofstra's in-person, on-campus" courses, as opposed to the Distance Learning option—and paid the higher tuition and fees to attend those campus

programs. *Id.* ¶¶ 7–12; 38–47. Confirming the in-person nature of the bargain as well as the in-person nature of their programs, Plaintiffs' bills for the Spring 2020 semester that listed their individual "Class Schedule" for which they were billed; identifying the on-campus location where their classes would be held, including the building, room, days offered, and start/stop time. *Id.* ¶ 20.

In March 2020, Hofstra began a series of cancellations ultimately leading to the transition of the school to a remote program, with students effectively barred from campus. On March 8, 2020, Hofstra cancelled undergraduate "in-person classes" for the week of March 9, 2020.[1] *Id.* ¶ 51. On March 10, 2020, Hofstra began cancelling all student organization related activities. *Id.* ¶ 52. On March 12, 2020, Hofstra announced a "transition [of] all in-person classes to online classes 'beginning at the conclusion of Spring Break on March 23 and until further notice.'" *Id.* ¶ 53. By March 15, 2020, Hofstra "announced that '[a]ll [a]dministrative and academic offices, including the child care center and library w[ould] be closed.'" *Id.* ¶ 54. So beginning on March 9, 2020—just 42 days into what was supposed to be a 110-day-long semester for undergraduate students—Plaintiffs "began losing access to the in-person instruction and campus services for which they had contracted. And by March 25, 2020, Defendant's physical campus was, barring exceptional circumstances, entirely closed off to students." *Id.* ¶ 56. But even though "Defendant ceased providing the education, facilities, technology, access, and specified services that it had marketed and, indeed, promised," *id.* ¶ 60, Defendant steadfastly refuses to provide any refund of tuition or fees for the Spring 2020 semester. *Id.* ¶ 66. As a result, Plaintiffs bring this action.

---

[1] For law students, Defendant announced on March 9 that classes for the day were cancelled and that classes would resume the following day but "be taught remotely via Zoom." Def.'s Mem. Supp. Mots. Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c) ("Mem") at 3. On March 12, 2020, Defendant extended remote instruction through March 27, 2020. *Id.* at 4.

**LEGAL STANDARD**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim. . . . In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. . . . The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Allegations of "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 176–77 (2d Cir. 2019). Thus, "[a]t the pleading stage, Plaintiff's burden is slight. A party advancing a breach of contract claim need not satisfy the particularity requirement of Rule 9(b). And courts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *Annuity v. Tightseal Constr. Inc.*, No. 17 CIV. 3670 (KPF), 2018 WL 3910827, at *10 (S.D.N.Y. Aug. 14, 2018). Plaintiffs' Complaint readily meets these requirements.

**ARGUMENT**

**I.      PLAINTIFFS PLAUSIBLY STATE A BREACH OF CONTRACT CLAIM**

**A.      The Court's prior finding that the Complaint states a plausible claim for breach of contract is law of the case.**

Defendant once again argues that Plaintiffs' Complaint must be dismissed for failure to adequately plead a breach of contract claim. Mem, at 8–19. *See also* ECF 22. However, this Court already determined that the Complaint adequately pled a breach of contract claim:

> I'm just going to say that I find that [the Complaint] does state sufficient facts to state a plausible claim as to the breach of contract count or claim. I do believe it's adequately pled in terms of looking

> at the handbook promises and so forth, that there is a potential breach of contract claim there, so I do believe it's adequately pled. As a result, I would deny the motion to dismiss the breach of contract claim.

April 15, 2021 Hrg. Tr. at 51:1–9.[2] With one exception (the so-called "disclaimer"), Hofstra's second bite at the apple reasserting the same arguments regarding the same pleading should be rejected and is frivolous. Given that the Court is now tasked with reviewing the very same pleading and the very same allegations, the Court's prior decision therefore falls squarely within the law of the case doctrine. *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (explaining the "[p]rinciple [of the law of the case doctrine] is that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case"). Because the pleading is the same, there is no "cogent" or "compelling" reason to deviate from the Court's prior decision. *Id.*

**B.    Plaintiffs plausibly allege Hofstra breached its contract with Plaintiffs.**

This Court correctly ruled that the Complaint adequately alleges a specific promise for in-person education. Hrg. Tr. at 51:1–9. *See also* ECF 25 (order). Hofstra contends "Plaintiffs' contractual claims fail because they have not identified a specific promise of in-person education in the Undergraduate Bulletin or Law Catalog." Mem. at 8. Hofstra's arguments fail.

Recently, Third Circuit Judge Stephanos Bibas, sitting by designation in the District of Delaware, in a near identical university tuition and fee refund class action, correctly applied the principles of law set forth herein to determine that the plaintiffs stated a plausible breach of contract claim against the University of Delaware. *Ninivaggi v. Univ. of Del.*, No. 20-cv-1693-

---

[2] Relevant portions of the April 15, 2021 Hearing Transcript ("Hrg. Tr.") are attached as **Exhibit A** to the Declaration of Joseph I. Marchese, filed herewith.

SB, 2021 WL 3709765, at *1 (D. Del. Aug. 20, 2021). As Judge Bibas explained:

> Before the pandemic, U. Delaware allegedly treated in-person and online classes as separate products: it charged separate prices for them and had no plans to move its in-person classes online. And for centuries, plaintiffs insist, students and schools have understood that college courses are taught in person. . . . They trudge bleary-eyed to their 8 a.m.'s, down caffeine during all-nighters in the library with their study groups, and run from one campus building to another in between. That is what it means to go "off to college." Plus, the school touts this on-campus experience on its website, in its admissions letters, and during admitted students' day. . .
>
> This history, custom, and course of dealing, along with the school's statements, plausibly created an implied promise of in-person classes. These claims will proceed to discovery.

*Id*. at *4–5. *See also Brittain v. Trustees of Columbia Univ. in the City of New York*, No. 20-cv-9194 (PKC), 2021 WL 3539664, at *3 n.1 (S.D.N.Y. Aug. 11, 2021) ("Under New York law, a contract may be implied in fact from the actions of the parties. Such a contract is no less binding than a written contract.") (citing *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)). As in *Ninivaggi*, Hofstra promised in-person and on-campus education through its bulletins and materials and impliedly through the parties' course of dealing. *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("The terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student . . . .") (citations and internal quotation marks omitted); *see also* Hrg. Tr. at 51:1–9 (holding that Hofstra made a specific promise).

Plaintiffs allege instances in which Hofstra specifically promised an in-person and on-campus education in its publications, bulletins, and enrollment materials. *See* Compl. ¶ 23 ("Defendant's on-campus and online options for the 2019–2020 school year were not interchangeable. Instead, depending on whether a student contracted for an in-person program or

an online one, Defendant provided an entirely different experience and set of services."); *id.* ¶ 26
("In its 2019–2020 Undergraduate Bulletin ("Bulletin"), for example, Defendant defined
Distance Learning courses as those which are 'taught entirely online.' . . . Meanwhile, on-
campus programs involved what Defendant called "in-person classes," and the myriad campus
resources and services described in greater detail below."); *id.* ¶ 30 ("Hofstra offered a few
online masters' programs during its 2019–2020 school year at a lower price than in-person
courses for the same programs."); *id.* ¶¶ 34–39 (describing Hofstra's representations regarding
in-person education and university facilities which appeared in "Defendant's bulletins, circulars,
regulations, catalogs, and other publications made available to students, including, *inter alia*,
Defendant's Bulletin and the 2019–2020 Student Handbook"); *id.* ¶ 40 (depiction of "Class
Schedule" demonstrating "the on-campus, in-person nature of classes by stating the on-campus
location where classes are held, including the building, room number, days offered, and start/stop
times"); *id.* ¶¶ 41–45 (detailing representations describing in-person promises and campus
resources); *id.* ¶ 46 (explaining what a student's "investment" at Hofstra covers, including
numerous in-person and on-campus resources); *id.* ¶ 47 (explaining "What Does Your Tuition
Cover?" and noting "[y]our investment at Hofstra University includes" a variety of in-person
education and experiences, including a "Vibrant Campus"). Hofstra also established a price
differential between its online and in-person programs. *Id.* ¶ 27 ("Finally, as further proof of the
differences between online and in-person courses, Defendant charged markedly less tuition and
fees for online programs as opposed to on-campus ones."); *see also* ¶ 30; *Ninivaggi*, 2021 WL
3709765, at *4.

In attempting to evade the Court's ruling that the Complaint adequately pleads a claim for
breach of contract as to tuition and fees, Hofstra mischaracterizes the Complaint. It argues that

"[i]n seeking a reimbursement of their 'tuition,' Plaintiffs are asking the Court to create a new definition of 'tuition,' *i.e.*, that 'tuition' is a payment for the extrinsic benefits of an on-campus academic experience." Mem. at 9. In reality, this case seeks a remedy for Hofstra's promise to Plaintiffs that in exchange for tuition and fees, Hofstra would provide in-person courses and on-campus facilities and resources. Based on Hofstra's bulletins, materials, and practice, Plaintiffs reasonably believed they would receive an in-person and on-campus experience. *See, e.g.*, *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 416 (N.D.N.Y. 2020) ("RPI's arguments about the definition of tuition again miss the mark. It may be that tuition is defined as 'payment for instruction,' but defendant can hardly deny that there is more to the contractual relationship than its argument would suggest. Paying tuition inherently changes the applicant's status to student. That status allows a student to access a number of resources she would be denied if she had not enrolled. Access to the school's computers, laboratory equipment, library services, research tools, and more hinge entirely on whether a student has paid up. In short, what a student expects to receive in exchange for tuition money covers much more territory than simply the right to take classes."); *Flatscher v. Manhattan Sch. of Music*, No. 20 Civ. 4496 (KPF), 2021 WL 3077500, at *6 (S.D.N.Y. July 20, 2021) ("Further undermining Defendant's argument that tuition is simply payment for instruction is the fact that [the school's] promotional materials contain several statements regarding access to physical facilities on campus that plausibly allege an implied contractual right to specific in-person instruction, certain services, and access to particular facilities.").

Hofstra also mischaracterizes Plaintiffs' allegations by contending it "met the terms of the implied contract with its students: it continued to provide Plaintiffs with instruction by Hofstra faculty following the State-ordered shutdown of its campus, and Plaintiffs took

advantage of that instruction and earned academic credits." Mem. at 10. But Plaintiffs allege they paid tuition and fees for more than just academic credits or to attend classes anywhere. Specifically, Plaintiffs paid for an in-person on-campus education and for access to Hofstra's on-campus resources and facilities. *See* Compl. ¶ 2 ("Plaintiffs and other similarly situated individuals ('the Class') contracted with Defendant for certain services; namely, a full semester's worth of live, on-campus instruction, along with access to campus facilities, services, events, and other resources"); ¶ 32 ("Plaintiffs . . . each enrolled in *on-campus* courses at Hofstra for the Spring 2020 semester. In doing so, they contracted with Defendant specifically for courses that would be delivered fully on-campus and for the many in-person resources and services that go along with them."). Many Hofstra students disagree with Hofstra's brazen view that students were paying $49,410 a year simply for "academic credits." Compl. ¶ 29. In fact, nearly 2,000 Hofstra students signed a student-led online petition seeking a pro-rated refund of tuition and fees due to loss of promised in-person and on-campus services that tuition and fees covered. *Id.* at ¶¶ 62–63. Ultimately, whether Hofstra met the terms of the bargain is a question for the trier of fact.

Hofstra also attempts to distinguish the specific allegations in the Complaint that establish a promise for in-person and on-campus education. Mem. at 11–12. Hofstra cites to other district and state court cases analyzing different allegations and different pleadings, none of which relate to the specific promises made by Hofstra. Each of these cases cited by Hofstra are distinguishable.

Defendant relies primarily on *Paynter v. New York Univ.*, wherein the parent of a student brought a breach of contract claim "because classes were suspended on May 7, 1970" following anti-war demonstrations. 319 N.Y.S.2d 893, 894 (1971). The court regarded the late-in-term suspension of classes to be a "minor" and "insubstantial change" in the schedule of classes. *Id.* at 894. Here,

however, Hofstra's cancellation of in-person classes beginning on March 9, 2020 was a complete upheaval for students. Compl. ¶ 66; *see also* ¶ 68 (explaining that "for more than half of the Spring 2020 semester, Plaintiffs and Class members could not attend classes in-person and were denied access to many of the specified services for which they had contracted and paid."). In addition to losing access to the in-person educational services for which they paid, students also lost access to all campus facilities, technology, services, and student programs for half the semester. *Id.*

Hofstra ignores the extensive body of law that has emerged in New York that contradicts its arguments here. *See, e.g.*, *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *11 (W.D.N.Y. Dec. 18, 2020) (denying motion to dismiss as to breach of contract and unjust enrichment claims); *Ford*, 507 F. Supp. 3d at 422–23 (denying motion to dismiss as to breach of contract and unjust enrichment claims for tuition and fees); *Booth v. Molloy Coll.*, No. 608750/2020, 2021 N.Y. Misc. LEXIS 4583, *1 (N.Y. Sup. Ct., Nassau County Aug. 10, 2021) (denying motion to dismiss all claims); *Brittain*, 2021 WL 3539664, at *3 (denying motion to dismiss contract claims); *Flatscher*, 2021 WL 3077500, at *1 (denying motion to dismiss contract and unjust enrichment claims); *Espejo v. Cornell Univ.*, No. 3:20-CV-467 (MAD/ML), 2021 WL 810159, at *4 n.1 (N.D.N.Y. Mar. 3, 2021). Given the persuasive nature of these cases, and the absence of binding authority, Hofstra provides no reason for the Court to deviate from its original ruling that the Complaint plausibly states a breach of contract claim.

Next, Hofstra impermissibly relies on factual arguments to dismiss Plaintiffs' Complaint, arguing that "what occurred in Spring 2020 is fundamentally different from the [Distance Learning] and online degree programs alleged by Plaintiffs." Mem. at 12. But this argument is a factual contention inappropriate for resolution on the pleadings. As Hofstra concedes, a Rule 12(c) motion is based on the four corners of the pleadings. *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 279 (E.D.N.Y. 2015) ("In deciding a Rule 12(c) motion, the district court may only

consider the facts as presented within the four corners of the complaint."). Therefore, any factual allegations made by Hofstra must be deferred to the summary judgment stage.

Lastly, Hofstra argues that the specific promises it heretofore denied existed are mere "opinion" or "puffery." Mem. at 13. But "[p]uffery" refers to statements that "do not provide any concrete representations . . . but are instead subjective claims about products, which cannot be proven either true or false." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (citations omitted); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.") (citation omitted). Hofstra did not state opinion in its marketing materials; it made specific promises about on-campus resources that students had access to during the Spring Semester 2020. Compl. ¶ 41 (describing technology support services and printing services on-campus); *id.* ¶ 42 (describing in-person career center services including "in-person" workshops and "field trips to companies"); *id.* ¶ 43(describing library facilities including "private, one-on-one research consultations by appointment"). The statements Plaintiffs point to were not simply vague exaggerations or overstatements, Hofstra actually provided Plaintiffs such on-campus experiences and resources through March 2020. Compl. ¶¶ 4, 48. Whether Plaintiffs had access to these resources thereafter can "be proven either true or false." *Lugones*, 440 F. Supp. 3d at 241. Plaintiffs either had access to the promoted resources or they did not, and for approximately half of the Spring Semester 2020, Plaintiffs allege they did not. Compl. ¶¶ 4, 48.

**C.    Plaintiffs sufficiently state a breach of contract for services paid for by student fees.**

Hofstra argues that the *Stellato* Plaintiffs "cannot sufficiently allege a specific promise by Hofstra with respect to any particular fee." Mem. at 13. However, Hofstra collected fees from students directly tied to using on-campus resources, which Plaintiffs were deprived of for approximately 50% of the Spring Semester 2020. *See* Compl. ¶¶ 7–12 (describing fees for on-campus resources, including a "Student Activity Fee," a "Technology Fee," and a "University Fee"); *id.* ¶ 39 ("As [the Handbook] and other Hofstra publications set out, in exchange for enrolling in and paying tuition and fees for Defendant's in-person courses and programs, Plaintiffs were promised on-campus instruction and certain specified services."); *id.* ¶ 41 (describing technology facilities and support on-campus); *id.* ¶ 46 (listing on-campus resources that a student's "investment" of fees pays for); *id.* ¶ 61 (listing specific services that fees were intended to cover that were not provided upon closure of Hofstra's campus).

As Judge Bibas cogently explained, "[t]he school charged the students for access to, among other things, its gym and health center. But the students lost access to those facilities when the pandemic hit. This is a classic implied-in-fact contract claim: If you charge a customer for a book and take his money, you have contracted to give him the book. You cannot later take the book back. So too, if a school charged a fee for an activity or service, it plausibly promised to provide it." *Ninivaggi*, 2021 WL 3709765, at *5. Even among New York courts that dismissed tuition claims, those courts permitted fee claims. *See, e.g.*, *Goldberg v. Pace Univ.*, No. 20 Civ. 3665 (PAE), 2021 WL 1565352, at *11 (S.D.N.Y. Apr. 21, 2021) (finding that the plaintiff stated "plausible clams that Pace breached its contract to provide access to some on-campus facilities and activities covered by these fees in exchange for [the plaintiff]'s paid

fees."); *In re Columbia*, No. 20-cv-3210 (JMF), 2021 WL 790638, at *6 (S.D.N.Y. Feb. 26, 2021) (finding the plaintiffs plausibly alleged that "Columbia breached a contract to provide access to certain campus facilities and activities in exchange for mandatory student fees"). Hofstra's fee arguments should be denied.

> **D.** **Hofstra's purported vague disclaimer language is irrelevant to the breach of contract claims.**

Hofstra argues that "Plaintiffs' breach of contract claims are subject to dismissal because Hofstra reserved its right to modify its courses." Mem. at 16. However, the purported disclaimers are too vague to be dispositive of Plaintiffs' breach of contract claims.

First, the purported disclaimers in both the Undergraduate Bulletin and Law Catalog do not state that Hofstra may switch instruction from in-person and on-campus to an online format, nor do they put Plaintiffs or Class members on reasonable notice of such a possibility. As the Undergraduate Bulletin disclaimer states: "The programs of instruction, the academic calendar and personnel announced in this Bulletin are subject to change at the discretion of the administration." Mem. at 16. And as the purported Law Catalog disclaimer states: "The Law School reserves the right to change its rules and regulations, admissions and graduation requirements, course offerings, tuition, fees and any other material set forth in the Law School Catalog at any time without prior notice." Mem. at 16–17. Read at face value, these purported disclaimers state, at best, that Hofstra can alter a change to a program of instruction (for example, eliminate a program for which there is insufficient enrollment, etc.), can change the academic calendar (*i.e.* can change when the semester begins and ends, when mid-terms and finals are held, when semester breaks are), and that personnel such as professors teaching the course can change. Nothing in these purported disclaimers reasonably put Plaintiffs on notice

that Hofstra may deprive them of the in-person and on-campus instruction for which they bargained. *See, e.g.*, *Bergeron*, 2020 WL 7486682, at *7 (rejecting argument that a so-called disclaimer stating a "right to alter any of its courses at any time" expressly permitted university's change to online education, where the "allegations clearly extend beyond coursework to the entirety of the educational experience," concluding that "the scope of the so-called disclaimer— if disclaimer it is—is not broad enough to extinguish Plaintiffs' claims"); *Durbeck v. Suffolk Univ.*, No. CV 20-10985-WGY, 2021 WL 2582621, at *10 (D. Mass. June 23, 2021) (rejecting disclaimer argument where the promise went beyond that "contemplated in the Disclaimer, including corporeal interactions with faculty, peers, academic and athletic facilities, affinity and extracurricular groups, and hands-on experiential opportunities").

Through counsel, Hofstra seeks to belatedly revise its disclaimers to add words that are not there, namely that Hofstra may change the "modality of instruction." Mem. at 17. But the disclaimers are silent as to the modality of instruction and Hofstra drafted the disclaimer and any contractual ambiguities must be construed against Hofstra. *See Ninivaggi*, 2021 WL 3709765, at *5 (rejecting similar argument where "[n]o provision expressly reserves the school's right to go online or expressly limits students' remedies. Nor is there any force majeure clause. U. Delaware could have added these terms; we will not."). Other than seeking to insert words that are not there, Hofstra does not explain how the purported disclaimers would reasonably put Plaintiffs on notice that they should expect Hofstra to have unfettered discretion to deprive them of the in-person and on-campus education they paid for and that Hofstra promised to deliver.[3]

---

[3] While Hofstra cherry picks two cases that found a disclaimer to be valid, there is an equal weight of authority in the opposite direction. *See Bergeron*, 2020 WL 7486682, at *7 ("Read in the light most favorable to Plaintiffs, as it must be at this stage of the proceedings, the scope of the so-called disclaimer—if disclaimer it is—is not broad enough to extinguish Plaintiffs'

Second, the disclaimers fail because Hofstra promised in-person education, and a defendant's specific promise trumps a generalized and ambiguous reservation of rights: "The students claim that the school specifically promised in-person classes and services. If they are right, that promise would trump a general reservation." *Ninivaggi*, 2021 WL 3709765 at *5; *see also Montesano v. Catholic Univ. of Am.*, No. 20-cv-3792 (DLF), 2021 WL 2894720, at *3 (D.D.C. July 9, 2021) ("The reservations of rights clearly permit the universities to make some changes to course programming and educational services. Yet certain assumptions of the broader implied contract between the universities and their students are so fundamental that the reservations of rights cannot reasonably be interpreted to waive them."). Reading the disclaimer as Hofstra would have it read leads to absurd results. For example, if Hofstra stopped all courses in Hempstead mid-semester and moved them to Australia, under Hofstra's reading students would have no recourse. That cannot be correct. In *Ninivaggi*, Judge Bibas explored the contours of this point, echoing this Court's "bait-and-switch" line of reasoning (*see* Hrg. Tr. at 37:19–23):

> Similarly, the students insist, being on campus is a core part of the educational deal: it is "so basic to the bargain" between students and an in-person university. . . . They may be right.
>
> No doubt, U. Delaware could not simply have stopped classes. Its counsel conceded that . . . So there is some implied limit on the school's freedom to change its teaching. ***True, universities have wide latitude to change course details. Professors fall ill, so substitutes fill in. Classrooms need repairs, so students must trek to different parts of campus. Scheduling conflicts arise, so schools may be unable to offer every class every semester. Not every detail in the course catalog is frozen in amber.***
>
> ***But suspending in-person instruction is fundamentally different.*** After taking the students' tuition, it switches to self-directed

claims."); *Fittipaldi v. Monmouth Univ.*, No. 20-05526 (MAS) (ZNQ), 2021 WL 2210740, at *9 (D.N.J. June 1, 2021) (declining to credit a purported disclaimer at the pleading stage).

> learning just to save money. That bait-and-switch would probably
> be unreasonable.

*Ninivaggi*, 2021 WL 3709765, at \*4 (emphases added, internal citations omitted). While Hofstra may make certain changes such as changing a campus location for a course or changing personnel, fundamental changes going to the core of the parties' bargain are a different matter and compel a different result. At minimum, the impact and scope of the disclaimer entails questions of fact for the jury and is not appropriate for dismissal at the motion to dismiss stage. *Rus, Inc. v. Bay Indus.*, 322 F. Supp. 2d 302, 309 (S.D.N.Y. 2003) ("If the terms are not clear, the interpretation of the contract becomes a question of fact for the jury . . . ."); *Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010) (explaining "interpretation of an ambiguous contract is generally a question of fact to be resolved by the factfinder").

Third, even if the Court were to somehow conclude that the undergraduate disclaimer is dispositive of Plaintiffs' claims, the disclaimer in the Undergraduate Bulletin makes no reference to fees, and therefore cannot be dispositive of Plaintiffs' fee claims. *See Deen v. New Sch. Univ.*, No. 05 Civ. 7174 (KMW), 2007 WL 1032295, at \*3–4 (S.D.N.Y. Mar. 27, 2007) (parsing terms of disclaimer in academic catalog and ruling it applied to some of defendant-school's implied promises).

Finally, the purported disclaimers do not apply to other of Hofstra's representations, as Plaintiffs do not rely solely on the course catalogs as the basis of the bargain. *See, e.g.*, *Patel v. Univ. of Vermont & State Agric. Coll.*, No. 5:20-cv-61, 2021 WL 1049980, at \*11 (D. Vt. Mar. 15, 2021) ("[A]ccording to Plaintiffs' complaint, the alleged term in the implied-in-fact contract for in-person instruction derives not solely from statements in the course catalogue, but also from

statements on UVM's website. If that is true, then the reservation of rights could not include a reservation of a right to alter a term that is derived (at least in part) from outside the course catalogue."). Accordingly, the Court should reject Hofstra's disclaimer arguments.

## II. PLAINTIFFS ALLEGE THAT HOFSTRA BREACHED CONTRACTS FOR IN-PERSON EDUCATION AND EXPERIENCES, NOT EDUCATIONAL MALPRACTICE.

Hofstra attempts to recast Plaintiffs' allegations into a claim for so-called "educational malpractice." Mem. at 17–19. The Court should reject this argument, as dozens of other federal courts faced with similar arguments have ruled.

New York courts confirm that the educational malpractice doctrine does not prevent a student from bringing a breach of contract claim where, as here, a student alleges that their school promised, yet failed to provide specific services. *See, e.g.*, *Ansari v. New York Univ.*, No. 96 Civ. 5280 (MBM), 1997 WL 257473, at *3 (S.D.N.Y. May 12, 1997). Claims like Plaintiffs' do not invoke educational malpractice because they do not require a court to review purely academic determinations or to evaluate "the course of instruction" or "the soundness of educational methodology." *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89–90 (2d Dep't 1982).[4] *See also Novio v. N.Y. Acad. of Art*, 317 F. Supp. 3d 803, 811–14 (S.D.N.Y. 2018) (permitting contract claim where plaintiff identified defendant's promises for "certain specified services," such as promise to "provide career services to plaintiff, including strong job placement support"); *Ansari*, 1997 WL 257473, at *3 (permitting contract claim where plaintiff pled that

---

[4] Defendant relies primarily on *Paladino*. Mem. at 18–19. But the breach of contract claim at issue in *Paladino* was "based upon [defendant's] alleged failure to provide a *quality* education to a student." *Paladino*, 89 A.D.2d at 86 (emphasis added). By contrast, the crux of Plaintiffs' allegations is that Defendant "failed to meet its obligation" to provide "certain specified services"—a situation which *Paladino* expressly recognized as presenting a potentially "viable" cause of action. *Id.* at 92. As a result, *Paladino* supports *Plaintiffs'* position.

"defendants promised specified services," including "state-of-the-art facilities, faculty tutor-advisors, appropriate recognition upon completion of the program, overviews of the latest techniques, [and] program activities from 9:00 A.M. to 4:00 P.M. every day"). Over the last year, New York courts have uniformly recognized that student refund claims do not allege educational malpractice. *See Flatscher*, 2021 WL 3077500, at *8 n.13 ("[I]n the wave of litigation arising out of pandemic-related school closures, many defendant-universities have asked courts to dismiss students' claims as violations of the educational malpractice doctrine. To date, no court in this District has accepted this argument and the Court agrees with its sister courts in rejecting Defendant's argument."). *See also Brittain*, 2021 WL 3539664, at *3; *Espejo*, 2021 WL 810159, at *4 n.1; *Ford*, 507 F. Supp. 3d at 417. As succinctly recognized in another case cited by Hofstra: as "[m]ost courts considering coronavirus tuition refund suits have found," Plaintiffs' claims "do not implicate the educational malpractice doctrine." *Shak v. Adelphi Univ.*, No. 20-CV-1951 (WFK) (RML), 2021 WL 3030069, at *2 (E.D.N.Y. July 15, 2021) (finding that educational malpractice doctrine did not bar plaintiff's claims, "[t]he core of [which] is not that his online education was subpar, but rather that he contracted for a different form of instruction than he received"). So too here.

Ultimately, Plaintiffs allege that, for the Spring 2020 Term, they "contracted with Defendant for certain services; namely, a full semester's worth of live, on-campus instruction, along with access to campus facilities, services, events and other resources." Compl. ¶ 2. *See also id.* ¶¶ 26, 32–47 (detailing such services). Evaluating these allegations will not require the Court "to 'evaluate the course of instruction' or 'review the soundness of the method of teaching that has been adopted by an educational institution.'" *Ansari*, 1997 WL 257473, at *3 (quoting

*Paladino*, 89 A.D.2d at 89–90). Rather, the Court and eventually a jury will have to determine whether Hofstra provided the services for which Plaintiffs allegedly contracted.

Finally, Hofstra points to the "State-mandated shutdown of its campus," arguing that because of that mandate "Hofstra's administrators exercised their judgment that effective instruction could continue remotely . . . ." Mem. at 18. This statement undercuts Hofstra's argument as "the decision to cease in-person instruction involved no judgment, much less an academic one, because Defendant was mandated by government orders to do so." *McCarthy v. Loyola Marymount Univ.*, No. 2:20-CV-04668 (SB) (JEMx), 2021 WL 268242, at *3 (C.D. Cal. Jan. 8, 2021). Hofstra's educational malpractice arguments fail.

## CONCLUSION

For the reasons provided above and for good cause shown, Plaintiffs respectfully request that the Court deny Defendant's motion as it applies to Plaintiffs in its entirety. If the motion is granted in any part, however, Plaintiffs request leave to amend. *See Hu v. City of New York*, 927 F.3d 81, 107 (2d Cir. 2019) ("[C]ourts should 'freely give leave' to amend pleadings 'when justice so requires.'") (quoting Fed. R. Civ. P. 15(a)(2)).

Dated: September 9, 2021

Respectfully submitted,

By: _/s/ Joseph I. Marchese_

BURSOR & FISHER, P.A.
Joseph I. Marchese
Andrew J. Obergfell
888 Seventh Avenue
New York, NY 10019
(646) 837-7150
jmarchese@bursor.com
aobergfell@bursor.com

BURSOR & FISHER, P.A.
Sarah N. Westcot (*pro hac vice* app.
forthcoming)
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
(305) 330-5512
swestcot@bursor.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Nathaniel A. Tarnor (Bar No. 4742797)
555 Fifth Avenue, Suite 1700
New York, NY 10017
(212) 752-5455
nathant@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (*Pro Hac Vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

BERGER MONTAGUE PC
Ellen T. Noteware
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
enoteware@bm.net

BERGER MONTAGUE PC
E. Michelle Drake (*Pro Hac Vice*)
Joseph C. Hashmall (*Pro Hac Vice*)
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
(612) 594-5999
emdrake@bm.net
jhashmall@bm.net

*Attorneys for Plaintiffs, individually and on behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on September 9, 2021, a true and correct copy of the foregoing, together with all attachments thereto, was served electronically via e-mail on the following counsel of record:

Stephanie M. Campbell scampbell@bsk.com
Suzanne Marie Messer messers@bsk.com

*Counsel for Defendant*

By: _/s/ Joseph I. Marchese_