UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MATTHEW MIGLIORE, on behalf of himself and other
individuals similarly situated,

                    Plaintiff,                                Civil Action No.:
                                                             20-cv-3671-GRB-ARL

          v.

HOFSTRA UNIVERSITY - MAURICE A. DEANE SCHOOL
OF LAW; and other affiliated entities and individuals,

                    Defendant.

GABRIEL STELLATO, HANNAH BUCKLEY,
REBEKAH COHEN, IMANI SCHULTERS,                              Civil Action No.
MIAH LATVALA, and MIKAYLA FALLON,                           2:20-cv-0199-GRB-ARL
individually and on behalf of all others similarly
situated,

                    Plaintiffs,

          v.

HOFSTRA UNIVERSITY,

                    Defendant.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND
12(c)**

                              BOND, SCHOENECK & KING, PLLC
                              Attorneys for Defendant
                              Office and P.O. Address
                              One Lincoln Center
                              Syracuse, New York  13202-1355
                              Telephone:  (315) 218-8000

i

# **TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ...................................................................................................... 1

I.   PLAINTIFFS HAVE NOT SUFFICIENTLY PLED BREACH OF CONTRACT
CLAIMS ................................................................................................ 1

II.  HOFSTRA'S DISCLAIMERS ARE VALID AND ENFORCEABLE ......................... 7

III. PLAINTIFFS' CLAIMS ASK THE COURT TO VALUE HOFSTRA'S ACADEMIC
OFFERINGS .......................................................................................... 8

IV. MIGLIORE'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED ................ 9

CONCLUSION ................................................................................................. 10

13078151.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amable v. The New School*,
20-cv-3811, 2021 WL 3173739 (S.D.N.Y. July 27, 2021)........................................................2

*Ansari v. New York Univ.*,
96-cv-5280, 1997 WL 257473 (S.D.N.Y. May 16, 1997).........................................................9

*Bergeron v. Rochester Inst. of Tech.*,
20-cv-6283, 20-cv-7486682 (W.D.N.Y. Dec. 18, 2020).........................................................5

*Booth v. Molloy Coll.*,
Index No. 608750/2020, 2021 N.Y. Misc. LEXIS 4583 (Sup. Ct. Nassau County Aug. 10,
2021) ........................................................................................................................................6

*Brittain v. Columbia Univ.*,
20-cv-9194, 2021 WL 3539664 (S.D.N.Y. Aug. 11, 2021) ....................................................5

*Burt v. Bd. of Trs. of Univ. of Rhode Island*,
No. 20-465-JJM, 2021 WL 825398 (D. R.I. Mar. 4, 2021).....................................................3

*In re Columbia Tuition Refund Action*,
20-cv-3208 and 20-cv-3210, 2021 WL 790638 (S.D.N.Y. Feb. 26, 2021) ....................3, 7, 10

*Cooper v. Peterson*,
164 Misc. 2d 878 (Sup. Ct. St. Lawrence County 1995).........................................................1

*Espejo v. Cornell Univ.*,
20-cv-467, 2021 WL 810159 (N.D.N.Y. Mar. 3, 2021)..........................................................5

*Fedele v. Marist Coll.*,
20-cv-3559 and 20-cv-3584, 2021 WL 3540432 (S.D.N.Y. Aug. 10, 2021) ..........................2

*Flatscher v. Manhattan Sch. of Music*,
20-cv-4496, 2021 WL 3077500 (S.D.N.Y. July 20, 2021)...................................................2, 5

*Ford v. Rensselaer Polytechnic Inst.*,
507 F. Supp. 3d 406 (N.D.N.Y. 2020) ....................................................................................4

*Gupta v. New Britain Gen. Hosp.*,
687 A.2d 111 (Conn. 1996) .....................................................................................................2

*Hassan v. Fordham Univ.*,
20-cv-3265, 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021),
*amended in part* 2021 WL 1263136 (S.D.N.Y. Apr. 6, 2021) ...............................................2

13078151.2

*Nungesser v. Columbia Univ.*,
   169 F. Supp. 3d 353 (S.D.N.Y. 2016)......................................................................2

*Prusack v. State*,
   117 A.D.2d 729 (2d Dep't 1986) ...........................................................................8

*Romankow v. New York Univ.*,
   20-cv-4616, 2021 WL 1565616 (S.D.N.Y. Apr. 21, 2021) ....................................4

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005)...................................................................................6

*Zagoria v. New York Univ.*,
   20-cv-3610, 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021)....................................3

13078151.2

<u>**PRELIMINARY STATEMENT**</u>

The pandemic that caused the events underlying these actions was novel; the law that requires their dismissal is not.  Breach of contract claims asserted by students against a university must be based in written language in the university's bulletins, circulars, and regulations.  No such language is cited by the plaintiffs in either the *Stellato* or *Migliore* actions in their pleadings or in their opposition papers.  This is not surprising because no specific language promising the plaintiffs "in-person instruction" or "on-campus experiences" in exchange for tuition and fees exists in these documents.  Despite plaintiffs' arguments to the contrary, plaintiffs received precisely what they  bargained for:  instruction by Hofstra's faculty in their chosen courses, and upon completion of the course work, credits toward their Hofstra degrees.  The arguments advanced by plaintiffs in their oppositions have repeatedly been rejected by district courts in New York.  The cases relied upon by plaintiffs that have held otherwise are in the minority in New York and are limited to the facts of those cases, or have been issued from other jurisdictions where the law deviates from that of New York.  Hofstra's motions should be granted, and plaintiffs' complaints should be dismissed.

**ARGUMENT**

## I.  PLAINTIFFS HAVE NOT SUFFICIENTLY PLED BREACH OF CONTRACT CLAIMS

"'[U]niversities must have the flexibility to make changes in furtherance of their educational responsibilities…an educational institution, which is a living, changing thing, may not reasonably be expected to remain static; and, conversely, change may reasonably be expected. Hence, each statement in a publication of what now is true does not necessarily become a term in the contract between the school and the student.'" *Cooper v. Peterson*, 164

1

Misc. 2d 878, 882 (Sup. Ct. St. Lawrence County 1995) (quoting *Soderbloom v. Yale Univ.*, 1992 WL 24448, at *4 (Conn. Sup. Ct. Feb. 3, 1992)).  Accordingly, to sufficiently allege a breach of contract action against Hofstra, the student plaintiffs "must identify specifically designated and discrete promises," (*Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016), "distinct from an overall obligation to offer a reasonable program." *Gupta v. New Britain Gen. Hosp.*, 687 A.2d 111, 119 (Conn. 1996) (citing *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 871-72 (App. Div. 1982)).

    While plaintiff Migliore acknowledges the "well-settled principle that the 'bulletins, circulars, and handbooks' contain the terms of the University-student relationship," (*Migliore Memo.*, at 4),[1] the *Stellato* plaintiffs quote from a District of Delaware case that holds that "history, custom, and course of dealing along with the school's statements, plausibly created an implied promise of in-person classes." *Stellato Memo.*, at 7.  The *Stellato* plaintiffs' resort to the decision of a court outside of New York is understandable but unavailing in light of the numerous decisions within the district courts of New York that have held that "prior course of conduct" cannot form the basis of a contract between Hofstra and its students. *Fedele v. Marist Coll.*, 20-cv-3559 and 20-cv-3584, 2021 WL 3540432, at *9-10 (S.D.N.Y. Aug. 10, 2021); *Amable v. The New School*, 20-cv-3811, 2021 WL 3173739, at *9 (S.D.N.Y. July 27, 2021); *Hassan v. Fordham Univ.*, 20-cv-3265, 2021 WL 293255, at *7 (S.D.N.Y. Jan. 28, 2021), *amended in part* 2021 WL 1263136 (S.D.N.Y. Apr. 6, 2021) (rejecting that a promise to provide

---

[1] Migliore confusingly states at a later point in his memorandum that "there is no requirement that a term providing for in-person instruction be expressly stated for a court to imply that contractual obligation." *Migliore Memo.*, at 7.  There is, of course, such a requirement under New York law (*see Defendant's Moving Memo.*, at 8-10).  The case relied upon by Migliore in support of this phrase, *Flatscher v. Manhattan Sch. of Music*, 20-cv-4496, 2021 WL 3077500 (S.D.N.Y. July 20, 2021), does not support Migliore's assertion, and further, is factually distinguishable for the reasons discussed *infra*.

13078151.2

in-person education arose based on "custom" or the "nature of plaintiff's dealings" with Fordham); *In re Columbia Tuition Refund Action*, 20-cv-3208 and 20-cv-3210, 2021 WL 790638, at *4 (S.D.N.Y. Feb. 26, 2021) (references to pre-pandemic modalities of instruction "merely memorialize the pre-pandemic practice; they offered no guarantee that it would continue indefinitely"); *Zagoria v. New York Univ.*, 20-cv-3610, 2021 WL 1026511, at *5 (S.D.N.Y. Mar. 17, 2021) (same).

The *Stellato* plaintiffs attempt to convince the Court that their allegations concerning distance learning or online programs, class schedules and generalized statements from Hofstra's website constitute "instances in which Hofstra specifically promised an in-person and on-campus education in its publications, bulletins and enrollment materials." *Stellato Memo.*, at 7-8. Migliore also relies on Hofstra's distance education policy, lack of online class offerings prior to the pandemic and references to library resources and career services as support for his breach of contract claims.[2] Hofstra addressed each of these allegations in its moving memorandum. *Defendant's Memo.*, at 11-13 and 15-16 (distance education and online programs); 13 (references to campus life and campus location); 14-15 (references to library resources and career services).

Nor have the plaintiffs in the *Stellato* or *Migliore* actions pointed to a specific promise by Hofstra to provide a specific service or resource in exchange for the payment of a particular fee.

---

[2] Migliore attempts to distinguish his distance education argument from that of the *Stellato* plaintiffs by making a nonsensical argument that "rather than constituting a *prior* course of conduct, the fact that Hofstra did not offer any online classes…is in fact evidence of Hofstra's then-*current* agreement to provide in-person instruction." Migliore is arguing that the modality of instruction that was offered prior to the pandemic is evidence of the alleged terms of the agreement between the parties. His attempt to somehow distinguish his argument from the "prior course of conduct" argument of the *Stellato* plaintiffs fails. *See, e.g., Burt v. Bd. of Trs. of Univ. of Rhode Island*, No. 20-465-JJM, 2021 WL 825398, at *4 (D. R.I. Mar. 4, 2021) (rejecting plaintiffs' attempts to bolster their breach of contract claim by highlighting differences between the universities' in-person and online programs; holding instead that plaintiffs' reliance on Defendant's "descriptions of the universities' histories, campuses, common student experiences" did not create obligations on the part of the university; rather, they were "vague and more akin to puffery rather than enforceable promises").

The *Stellato* plaintiffs simply reiterate their allegations, arguing that those allegations "describe fees for on-campus resources," *Stellato Memo.*, at 13. As discussed in Hofstra's moving memorandum, however, the *Stellato* plaintiffs' conclusory allegations do not allege that they paid any particular fee in exchange for any particular service, nor do they allege that they did not receive a particular service. Migliore's fee-based allegations fare no better. Recognizing the weaknesses (and, as described by Migliore himself, the Court's already-expressed skepticism about these allegations), he relegates his arguments to only a footnote that reiterates the allegations contained in the SAC. *Migliore Memo.*, at 10 n.7. In short, both the *Stellato* and *Migliore* plaintiffs' allegations concerning fees "fall[] short of the specific statements necessary to reflect a promise to provide certain in-person services in exchange for students paying those fees." *See Romankow v. New York Univ.*, 20-cv-4616, 2021 WL 1565616, at *4 (S.D.N.Y. Apr. 21, 2021).

The cases upon which plaintiffs rely are distinguishable. The courts in *Ford, Flatscher* and *Brittain* did not imply terms as plaintiffs ask the Court to do here. The court in *Ford* found that RPI's catalog contained specific statements describing a mandatory residential program and extolling its benefits, and that those particular statements were sufficient to survive a Rule 12 motion. *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 414-15 (N.D.N.Y. 2020). Here, Plaintiffs do not allege that Hofstra has a residence requirement that is integrated into its academic program; indeed, such an allegation would be frivolous because no such requirement exists at Hofstra. The court in *Ford* also did not address the import of a disclaimer such as those contained in the Undergraduate Bulletin and Law School Catalog.[3]

---

[3] The court in *Ford* also noted that the defendant argued that tuition was payment for instruction, and that if this were the case, then a school could "promise anything it wished in terms of its instruction," and be "insulated from a suit to recover any portion of tuition so long as it actually provided some education to its students." *Ford*, 507 F. Supp. 3d at 417. Hofstra has not argued that tuition is simply payment for

4

*Flatscher v. Manhattan Sch. of Music*, 20-cv-4496, 2021 WL 3077500 (S.D.N.Y. July 20, 2021) and *Brittain v. Columbia Univ.*, 20-cv-9194, 2021 WL 3539664 (S.D.N.Y. Aug. 11, 2021), involve students enrolled in performing arts programs. In *Flatscher*, the court found that the relevant course catalog contained promises concerning facilities specifically designated for the performing arts programs, including professional audio and video recording studios and concert halls, and required that the students be physically present to complete certain course requirements. 2021 WL 3077500, at *2. Similarly, in *Brittain*, the plaintiffs were graduate students seeking master's degrees in fine arts, with specializations in visual art, sound art or film. There, the court held that the promised programs were "geared around the physical creation of art," and that the course descriptions in the relevant handbooks and the terms of a studio lease, were sufficient to allege that Columbia promised "certain specified services." 2021 WL 3539664, at *6. No such specific requirements exist in either the *Stellato* or *Migliore* complaints.

In *Espejo v. Cornell Univ.*, 20-cv-467, 2021 WL 810159 (N.D.N.Y. Mar. 3, 2021), the Northern District of New York found that a statement in Cornell's mission statement related specifically to "a Cornell *education*," i.e., "the *education* for which Plaintiff paid tuition," which was explicitly described by Cornell to include components "in the classroom" and "on campus." No such statements are quoted in either complaint here.

In *Bergeron v. Rochester Inst. of Tech.*, 20-cv-6283, 2021 WL 7486682 (W.D.N.Y. Dec.

---

"some education," but for instruction in plaintiffs' chosen courses in exchange for credit toward a Hofstra degree. Hofstra does not contend that it could have retained all of the plaintiffs' tuition payments for the Spring 2020 Semester simply because it provided instruction up until March 10, 2020; rather, Hofstra continued to provide instruction after March 10, 2020, in plaintiffs' chosen courses, taught by the same Hofstra faculty. Hofstra made the academic judgment that such instruction, and the completion of the course work, would be sufficient to earn credits toward a Hofstra degree. Hofstra's tuition charges as stated in its Bulletins and Law Catalog for 2019-2020 were related to the number of credits for which a student registers.

18, 2020), RIT moved pursuant to Rule 12(b)(6) and the court denied RIT's motion, holding that it could not consider the documents relied upon by RIT. Here, the Bulletins and Law School Catalog are referenced in both complaints and are integral to those allegations. In *Stellato,* Hofstra answered, attached the Undergraduate Bulletin to the answer, and then moved for judgment on the pleadings. It is, therefore, entirely appropriate to rely upon the terms of those documents (including the disclaimers) on both pending motions. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (the court may consider the pleadings, any written instrument attached to them as exhibits or any document that is "incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint.").[4]

Finally, the *Stellato* plaintiffs cite to *Booth v. Molloy Coll.*, Index No. 608750/2020, 2021 N.Y. Misc. LEXIS 4583 (Sup. Ct. Nassau County Aug. 10, 2021). In *Booth*, the court summarily denied the defendant's motion to dismiss without any discussion or analysis, limiting the usefulness of this decision.[5]

A rudimentary review of the allegations as pleaded in the *Stellato* and *Migliore* complaints demonstrates that none of plaintiffs' allegations point to a specific promise contained in any Hofstra document to provide in-person instruction or an "on-campus experience" no matter the circumstances. At most, the complaints contain references to experiences that may or

---

[4] To the extent that the court in *Bergeron* found that statements about the value of RIT's campus life are the types of specific promises are required to state a breach of contract claim, Hofstra respectfully submits that *Bergeron* was wrongly decided.

[5] It should further be noted that while the motions in Booth were motions to dismiss pursuant to CPLR 3211, the court's decision indicates that the complaint "raises questions of fact, and accordingly, the Defendant's motion to dismiss is denied." Of course, "questions of fact" arise in the context of a summary judgment motion, not a motion to dismiss. Whether this decision was correctly decided is questionable.

13078151.2

may not occur in-person; they do not make a specific promise *of* in-person instruction.  The breach of contract claims in both complaints with respect to tuition and fees must be dismissed.

## II.  HOFSTRA'S DISCLAIMERS ARE VALID AND ENFORCEABLE

Plaintiffs' efforts to convert course schedules, attendance policies, website references and marketing materials into an enforceable contract are contrary to the Bulletin's and Law Catalog's reservation of rights provisions.

The applicable Undergraduate Bulletin contains the following language:

> The programs of instruction, the academic calendar and personnel announced in this Bulletin are subject to change at the discretion of the administration.

The applicable Law Catalog likewise reserves Hofstra's right to alter its courses:

> The Law School reserves the right to change its rules and regulations, admissions and graduation requirements, course offerings, tuition, fees and any other material set forth in the Law School Catalog at any time without prior notice.

Specific disclaimers such as Hofstra's "may excuse the [College] from a specific promise that would otherwise be a contractual obligation." *In re Columbia*, 2021 WL 790638, at *5 (quoting *Deen v. New Sch. Univ.*, 05 Civ. 7174, 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007)).

The *Stellato* plaintiffs argue that the disclaimers in the Bulletin and Law Catalog are "vague" and "irrelevant."  Migliore characterizes the Law Catalog's disclaimer as "impossibly broad."  Plaintiffs in both matters argue that the disclaimers should be ignored because they do not use the phrase "modalities of instruction."  Migliore further relies upon cases interpreting the term "course offerings" to argue that Hofstra's disclaimer did not encompass the right to transition to a remote modality in the face of a global pandemic.  *Migliore Memo.*, at 15.  The *Stellato* plaintiffs offer their own interpretation of the disclaimers as related only to Hofstra's right to "eliminate a program for which there is insufficient enrollment," or "change when the

7

semester begins and ends, when mid-terms and finals are held, when semester breaks are," and "that personnel such as professors teaching the course can change." *Stellato Memo.*, at 14. These arguments are unavailing.

First, the Law Catalog's disclaimer is not limited to "course offerings." Rather, it explicitly includes "rules and regulations," and "any other material set forth in the Law School Catalog." Second, while Hofstra has, through the Bulletin's disclaimer, reserved its right to make the changes described by plaintiffs, it is certainly not limited to only those suggested alterations.

New York courts have upheld the right of colleges to include such disclaimers in their bulletins. *Prusack v. State*, 117 A.D.2d 729, 730 (2d Dep't 1986). In *Prusack*, the Second Department affirmed the dismissal of a tuition refund claim against SUNY Stony Brook because Stony Brook's bulletin contained a disclaimer reserving its right to increase tuition and "since specific disclaimers were included in the bulletins provided to claimants to the effect that tuition charges were subject to change, the State was not contractually obligated." *Id*.

Accordingly, in addition to their failure to identify a specific promise as discussed in Point I, *supra*, plaintiffs' breach of contract claims should be dismissed in light of Hofstra's disclaimers.

## III. PLAINTIFFS' CLAIMS ASK THE COURT TO VALUE HOFSTRA'S ACADEMIC OFFERINGS

Plaintiffs argue that their breach of contract claims are not barred as impermissible educational malpractice claims. Migliore claims that he is seeking the difference in "economic value" between what he paid for and what he received. *Migliore Memo.*, at 16-17. The *Stellato* plaintiffs argue that the Court is not required to evaluate the course of instruction that they received to award them relief. *Stellato Memo.*, at 19. To the contrary, the plaintiffs are not

simply asking the Court to compare the price of "traditional" instruction to that of "online" instruction. Indeed, Migliore argues that there is no basis to do so because prior to the pandemic, Hofstra did not offer online programs for law students, and the *Stellato* plaintiffs do not point to any undergraduate online program that was equivalent to the programs in which any of the plaintiffs were enrolled that can be used as a direct comparison.

Boiled down, plaintiffs are asking the Court to evaluate whether the remote instruction during the Spring 2020 was worth something different – less – than what they allegedly paid for in-person instruction. They are asking the Court to assign a value to the education they received.

Plaintiffs cannot dispute that they received "something" of value during the latter part of the Spring 2020 Semester. The Court cannot evaluate the value of the instruction plaintiffs received without evaluating the quality of the instruction they received, and plaintiffs' breach of contract claims should be dismissed. *Ansari v. New York Univ.*, 96-cv-5280, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) (quoting *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89-90 (2d Dep't 1982)) ("Where the essence of the complaint is that the school breached its agreement to provide an effective education," and where the court is asked to "evaluate the course of instruction" or "review the soundness of the method of teaching that has been adopted by an educational institution," the claim will be dismissed).

## IV. MIGLIORE'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Migliore argues that he can allege an unjust enrichment cause of action because "if Hofstra were to successfully persuade this Court that the parties' agreement did not, in fact, contain a provision entitling Plaintiff to in-person instruction and other on-campus services and facilities, the absence of this contractual provision would necessarily mean that the subject matter was not 'covered by a valid, enforceable contractual obligation.'" *Migliore Memo.*, at 18

13078151.2

Migliore's argument misses the mark.

The subject matter of his unjust enrichment claim – the instruction and services he received during the Spring 2020 Semester – *is* covered by a valid, enforceable contract. That contract simply does not include the terms that Migliore alleges. Migliore cannot get around the lack of a promise for in-person instruction or even an "on-campus experience" in Hofstra's Law Catalog or Handbook by alleging an unjust enrichment cause of action. In other words, he cannot re-write the terms of the relationship between himself and Hofstra by couching his contract claim as one for "unjust enrichment." *See In re Columbia*, 2021 WL 790638, at *9 (dismissing plaintiffs' unjust enrichment claim and rejecting plaintiffs' argument that they may plead unjust enrichment in the alternative because the parties did not dispute that they shared a contractual relationship.[6]

## CONCLUSION

The Court should grant Hofstra's motions and dismiss both actions in their entirety.

Dated:  September 23, 2021            BOND, SCHOENECK & KING, PLLC

By:      *s/Suzanne M. Messer*
          Suzanne M. Messer, Esq.
One Lincoln Center
Syracuse, New York 13202
(315) 218-8000
Email:  smesser@bsk.com

---

[6] Defendant notes for the Court's information that the plaintiffs in *Rynasko v. New York University* appealed the Southern District's dismissal of a case that alleged similar allegations as those by plaintiffs in these actions. The briefing on that appeal was completed on September 10, 2021. Case No. 21-1333-cv. No date has been set for argument. In connection with this appeal, an amici brief was jointly filed by numerous higher education focused organizations in support of New York University. This amici brief focuses on the impacts of the pandemic on colleges and universities. Plaintiffs allege and imply that Hofstra somehow profited by transitioning to remote instruction in the Spring of 2020. The referenced amici brief dispenses with such a notion. *See* Case No. 21-1333-cv, Doc. No. 63.

13078151.2